NATIONAL BANK OF WEBB CITY v. NEWELL-MORSE ROYALTY COMPANY, Plaintiff in Error.

Division One, June 30, 1914.

1. **CORPORATION: Negligence in Issuing Stock.** Where the vice-president who signed the stock issued to the company's secretary testifies that by an examination of the stock books he could have determined that the stock was fictitious and was an over issue and that he made no such examination and no precautions against fraud were taken, the charge that the company was guilty of negligence in issuing the void stock is established.

2. ————: ————: Reliance on Regularity. A bank which loans money and takes as security certificates of corporate stock issued to the borrower, has a right to rely upon the regularity of the issue as disclosed by the face of the certificates—in this case, upon the signature of the company's vice-president, the signature of its secretary and its corporate seal.

3. ————: Certificates of Stock: Governed by Rules of Commercial Paper. The general rule of law respecting bona-fide purchasers of commercial paper for value, before maturity, are applicable to corporate stock certificates so far as their peculiar nature will admit.

4. ————: ————: Holder for Value Without Notice: Damages. The holder for value of a fictitious certificate of corporate stock, issued by the proper officers of the corporation, without notice of the fraud or other defenses against it, has a primary and direct claim, the limit placed by the charter upon the issue of stock having been reached, to such damages from the corporation as shall be sufficient to recoup him for his loss, whether the stock was bought or taken as collateral security, or whether fraudulently or negligently put in circulation.

5. ————: ————: ————: Nominal or Actual Damages. Although the market value of the stock is not in terms shown, yet where it appears that there was a pool of most of defendant company's stock, that the stock was not on the market, the fictitious certificate recites its value, and the evidence shows that the money value of defendant's holdings is in excess of its capital stock, the bank which in good faith accepts it as collateral security from the person to whom issued, without notice of its infirmity, in a suit for damages for its negligent issue, is entitled to substantial and adequate damages, rather than a mere nominal sum..

Error to Jasper Circuit Court.—*Hon. D. E. Blair*, Judge.

AFFIRMED.

*Thomas & Hackney* for plaintiff in error.

(1) Under the pleadings and evidence the defendant was not liable for the fraud of Newell in illegally issuing to himself the spurious certificate of stock. This stock had never been thrown on the market. It was issued on the very day of the loan and bore the

same date as the loan papers. The plaintiff was not dealing with the defendant corporation; it was dealing with Newell in his individual capacity. It relied on Newell's individual representations. It placed confidence in Newell. It was deceived and defrauded by Newell. The certificate was entirely in the handwriting of Newell, except the signature of the vice-president, and the certificate being newly issued and so long after the organization of the corporation the plaintiff was bound to know at the time of making the loan that Newell could acquire the stock only by a transfer on the books. Farrington v. South Boston R. Co., 150 Mass. 406, 5 L. R. A. 849; Moores v. Bank, 111 U. S. 156; 1 Cook on Corp (6 Ed.), p. 805, (4 Ed.), p. 571; 10 Cyc. 445 (B); 2 Thomp. on Corp., sec. 1499; Whitfield v. Copper Co., 123 Pac. 1078; Lee v. Smith, 84 Mo. 304; Bank v. Edwards, 147 S. W. 978. (2) The court erred in refusing declarations of law 2, 3 and 4 asked by the defendant. Under Sec. 8, art. 2 of the Constitution of Missouri, the certificate was absolutely null and void, having been issued in excess of the authorized capital stock of the defendant company, and Newell not having power under the constitution, acting singly or in conjunction with any other officer of the corporation, to issue said certificate, did not have the power to put the same in circulation and any frauds committed by him, or any representations made by him, with respect to the stock were not the representations of the defendant company and were not binding on the defendant. The restriction contained in the Constitution on the powers of corporations and their officers in the issuance of stock puts every purchaser of stock of a Missouri corporation on notice to determine the one important question of whether or not the stock is issued in excess of the powers of the corporation. If the corporation can be held liable for the frauds of its officers in issuing spurious certificates in excess of the authorized capital stock and this lia-

bility is limited only by the value of an equal number of genuine shares of stock, then the constitutional provision is shorn of its vigor and becomes a dead letter, for the officers can do indirectly by fraud and bad faith what they could not do directly by contract in good faith. (3) The market value of the stock of the defendant company was not shown and the plaintiff, if allowed to recover, was entitled to nominal damages only, and the judgment was therefore excessive. The evidence adduced on the trial showed that Newell had issued fraudulent certificates of stock to the extent of 850 shares having an alleged face value of $85,000. It appears also that other similar damage suits were pending against this company on some of these fraudulent certificates. The amount of the defendant's debts and liabilities is not shown. The evidence simply showed that the company originally owned a quarter section of land, the fee of which was worth from $1500 to $2000 per acre, but it further shows that this land had been leased by defendants to mining companies and some of it worked out, and what the defendant company's interest in the land, subject to the mining leases, was worth is not shown. Under these circumstances the court was not justified in assuming, as it did, that 250 shares of genuine stock had a market value of as much as the plaintiff's loan to Newell.

*Frank L. Forlow, Norman Cox* and *Hugh Dabbs* for defendant in error.

(1) The certificate of stock pledged to respondent was issued in excess of the amount limited by law and by the articles of incorporation of appellant. It bore the genuine signatures of the vice-president and secretary, who had authority to issue the stock of the company, and was actually issued by them and certified by the corporation under its seal. The certificate was issued in favor of the secretary, Newell, who, the

record shows, was owner of a majority of the stock
and who was a director of the corporation and had ab-
solute control and management of its business, with-
out any inquiry or supervision or examination of the
corporate records by the board of directors, officers or
stockholders of the corporation. Respondent received
this certificate in good faith as collateral security for
the loan to Newell. The certificate, on its face, repre-
sented to respondent and to the public, by appellant
corporation, through the acts of its officers, that J. P.
Newell was the owner of 250 shares of its capital stock.
It was presented to respondent as security and as a
pledge by the very agent that appellant held out to
the public. The stock was worthless, and void. Un-
der these circumstances, the appellant corporation was
liable to respondent for the damage sustained by the
latter by reason of the issue and circulation of this
fraudulent and spurious certificate of stock by its offi-
cers in the apparent line of their duty. Davey v. Roy-
alty Co., 169 Mo. App. 565; Railroad v. Bank, 56 Ohio
St. 351, 43 L. R. A. 783; Watch Case Mfg. Co. v. Dough-
erty, 62 Ohio St. 595; Tome v. Parkersburg R. Co.,
36 Md. 36; Maryland R. Co. v. Bank, 60 Md. 36; Hav-
ens v. Bank, 133 N. C. 214, 95 Am. St. 627; Titus v.
Turnpike Road, 61 N. Y. App. 237; Railroad v. Schuy-
ler, 34 N. Y. App. 30; Allen v. Railroad, 150 Mass.
200, 15 Am. St. 186; Jarvis v. Manhattan Beach Co.,
148 N. Y. App. 652, 31 L. R. A. 778; Bank v. Railroad,
137 N. Y. App. 231; Land Co. v. Parker, 87 Am. St.
845; Land Co. v. Hildebrandt, 79 N. W. 753; Watson
v. Printing Co., 56 Mo. App. 153; Thompson on Cor-
porations, secs. 1500-1501; Colbrook on Collateral Se-
curities, sec. 314; Clark & Marshall on Corporations,
secs. 428-433; Cook on Corporations (6 Ed.), sec. 293;
Purdy's Beach on Corporations, secs. 279-280. (2) Pur-
chasers, or parties receiving stock as security for a
loan, are not bound to look beyond the certificate itself,

nor to examine the books of the corporation to ascertain whether the stock has been issued according to law. This is the duty of the corporation and its officers. Railroad v. Bank, 43 L. R. A. 784; Titus v. Turnpike Co., 61 N. Y. App. 243; Jarvis v. Manhattan Beach Co., 31 L. R. A. 778; Allen v. Railroad, 15 Am. St. 191; Trust Co. v. Glass Co., 213 Pa. St. 307; Morawitz on Corporations, sec. 185; Land Co. v. Parker, 87 Am. St. 845; Trust Co. v. Lumber Co., 118 Mo. 454; Havens v. Bank, 95 Am. St. 637. (3) The certificate of stock in question, although fair on its face, was void because issued in excess of the authorized capital stock of the corporation, and the liability therefor is the same whether the certificate is void because prohibited by the Constitution, the statutes of the State, or void at common law. Clark & Marshall on Corporations, sec. 430; Thompson on Corporations, secs. 1490-1493; Purdy's Beach on Private Corporations, sec. 283; Railroad v. Schuyler, 34 N. Y. App. 50; Land Co. v. Parker, 87 Am. St. 845; Allen v. Railroad, 15 Am. St. 185; Cook on Corporations (6 Ed.), secs. 292-3; Davey v. Royalty Co., 169 Mo. App. 565. (4) A certificate of stock in a corporation is a continuing affirmation by it that the person to whom it was issued is the owner of the shares therein named, and it partakes, to a great extent, of the qualities of a negotiable security. It can be transferred and passes from hand to hand by delivery, upon being endorsed by the original holder by signing a blank power of attorney authorizing the person therein named to transfer it on the books of the corporation. It is not requisite to title that the stock should be transferred on the books of the corporation. Keller v. Machine Co., 43 Mo. App. 87; Trust & Savings Co. v. Lumber Co., 118 Mo. 458; Havens v. Bank, 95 Am. St. 635; Bank v. Lanier, 11 Wall. (U. S.) 369; Dain Mfg. Co. v. Seed Co., 95 Mo. App. 144; O'Brien v. Cummings, 13 Mo. App. 199; Crenshaw v. Mining Co., 110 Mo. App. 355; Austin v. Hayden, 171 Mich.

38; Safe D. Co. v. Hibbs, 229 U. S. 394; Clark & Mar-shall on Corps., sec. 430.    (5) The evidence shows that at the time of the pledge of the certificate of stock to respondent as security, the property of the corporation was of the approximate value of $320,000.    The par value of its capital stock was $250,000.    The par value of the certificate delivered to respondent as security for the loan of $10,000 was $25,000, or more than twice the amount of the loan.    This evidence was competent to show the value of the stock, and, in the absence of evidence of actual sales of stock, the law presumes its market value to be its par value, because the corporate records show the stock to have been fully paid up.    Trust & Savings Co. v. Lumber Co., 118 Mo. 461; Hewitt v. Steele, 118 Mo. 474; Muck v. Hayden, 173 Mo. App. 32.    (6) It was the duty of the corporation, and of the directors, as well as its vicepresident, Blair, to know the condition of its stock books at the time Blair signed the certificate in question.    The law imputes knowledge to the corporation of facts which its president and directors ought to know in the exercise of ordinary diligence in the discharge of their official duties, and, with respect to the rights of third parties, this presumption is conclusive.    Thompson on Corporations, secs. 5308, 6529; Martin v. Webb, 110 U. S. 728; 10 Cyc. 1059; Stonecutter v. Myer, 64 Mo. App. 533; Clark & Marshall on Corps, sec. 718; Bank v. Lovitt, 114 Mo. 519; Taylor v. Mining Co., 247 Mo. 1.

GRAVES, J.—This case reached us by virtue of our writ of error directed to the circuit court of Jasper county.    Plaintiff below, defendant in error here, is a banking corporation under the laws of the United States, doing business in Jasper county, Missouri.    Defendant below, plaintiff in error here, is a business corporation organized under the laws of this State.    For convenience we shall speak of the parties as plaintiff

and defendant rather than plaintiff in error and defendant in error. In other words, we shall use the style of the case below rather than its style here. Matters of proof and pleading can well be stated together.

Defendant was incorporated with a capital stock of $250,000, divided in shares of $100 each. Its capital stock was paid by the transfer of 160 acres of mining lands near Webb City, Missouri, shown at the time of the trial to be of a value in excess of the $250,000. The action is one sounding in tort, and plaintiff seeks to recover of defendant damages in the sum of $10,000, with interest thereon from January 14, 1910. Plaintiff had judgment below for $10,155, from which judgment defendant sued out its writ of error herein.

Defendant was incorporated June 22, 1905. Its full capital stock was issued in the beginning, but some 1500 shares were issued to J. P. Newell, as trustee. Newell was the secretary from the beginning down to and including the transaction involved in the suit. One S. F. B. Morse was president during all the time, as was H. W. Blair its vice-president. Newell, the secretary, received 850 shares of stock in his own right, as well as those held by him in trust. The petition charges that the defendant by and through its officers, directors and agents negligently permitted Newell, its secretary, to issue two certificates of stock numbered respectively 198 and 200, in excess of its authorized capital stock, certificate 198 for 150 shares and certificate 200 for 250 shares. Both certificates were to J. P. Newell, the secretary, and were signed by J. P. Newell as secretary, and H. W. Blair, as vice-president, and each had the corporate seal attached. The certificates were regular upon their face. Plaintiff relying upon the certificate of stock No. 200 for 250 shares, loaned to Newell, upon Newell's application and request and on his note therefor, the sum of $10,000, and took said certificate No. 200 as security for

said loan. Under the facts pleaded and proven Newell practically ran the corporation. Neither Morse nor Blair made inquiry when they signed up certificates of stock presented to them by Newell. Neither these officers nor the directors examined the stock book in which the only account of stock was kept. The certificates mentioned were signed by Blair, without examination of the books, or any inquiry as to the status of the stock account. Blair testified that if he had examined the books he could have discovered the fact that these certificates were in excess of the authorized capital of the corporation, and were fictitious, but that he did not so do. Newell had the corporation books in his office in Carthage, Missouri, and Blair resided there.

Afterward the plaintiff discovered the fact that Newell had procured these certificates of stock to be fraudulently issued, and therefore demanded of the corporation good shares of stock or a return of its $10,000, and interest, which Newell got personally and used for his own account. Defendant refused to do either, and thereupon this suit, with result as aforesaid.

The petition counts upon the negligence of the defendant in issuing such void stock. Matters pleaded by way of the answer will be noted so far as necessary in the course of the opinion.

I. Defendant by its answer averred that the certificate of stock was fraudulently issued by Newell, and that it was the fraud of Newell as an individual which occasioned the loss to plaintiff, and that such stock being issued without authority of defendant, no liability attached to it. Around this and the plaintiff's charge of defendant's negligence is centered the legal battle of this case. That the defendant was negligent in the conduct of its business, and rested its faith too much upon its secretary, J. P. Newell, is indelibly written throughout this record. Time and again stock

Corporation: Negligence in Issuing Stock.

certificates were signed and issued without any pre-
cautions against frauds. No examination of the stock
book was made at such times, when such an examina-
tion would have disclosed the fraud. The vice-presi-
dent, who signed the certificate in question, said that
by an examination of the stock books he could have
determined the fact that it was an over issue of stock.
With the negligence of the defendant overwhelmingly
shown in this regard, how stands the case? It should
be remembered that the certificate of stock was not is-
sued direct to the plaintiff, for the courts seem to draw
a distinction here. Had the plaintiff received stock
issued direct to it, a duty might have arisen thereby
for plaintiff to have examined into the regularity of
the issue. But we do not take that to be the rule on
the facts of this case. Plaintiff had a right to rely
upon regularity of the issue as disclosed by the face
of the certificate, i. e., by the signature of the vice-
president, the signature of the secretary and the cor-
porate seal. Under the facts of this case the corpora-
tion defendant is liable for the negligent issue of this
spurious stock by its officers in the apparent line of
their duty.

The facts of this case were before the Springfield
Court of Appeals in a companion case, and that court
held the defendant liable. [Davey v. Newell-Morse
Royalty Co., 169 Mo. App. 565.] In 1 Purdy's Beach
on Private Corporations, sec. 273, it is said:

"A certificate of stock is not a negotiable instru-
ment, but a bona-fide purchaser may, by operation of
the law of estoppel, take it free from equities of pre-
vious holders, who have enabled persons to sell it to
the purchaser who has given value for it, before he
knew of any defect in the seller's title. The general
rules of law respecting bona-fide purchasers of com-
mercial paper for value, before maturity, are applied
to stock and corporate securities so far as their pe-
culiar nature will admit. Although corporate bonds

may have been wrongfully put into circulation, a purchaser in good faith, ignorant of the circumstances, may enforce their payment.   Accordingly, where a corporation was authorized to issue bonds secured by mortgage to the amount of two-thirds of its capital paid in, and it issued bonds to an amount less than two-thirds of its authorized capital, but much more than the amount paid in, the bonds were enforceable in the hands of bona-fide holders.  So in respect of stock certificates, if the owner indorses them in blank, and puts them in the hands of a broker or agent, who sells or pledges them in fraud of the owner's rights, he nevertheless cannot reclaim them from an innocent holder for value.  A bona-fide purchaser of a certificate from defendant before levy of attachment or execution in a suit, is entitled to retain the stock.  The assignee thereof takes them subject to all equities existing against the assignor.  If the company transfers the shares to the indorsee of the certificate after notice of an adverse claim, it does so at its own peril.  They are said to be of the nature of quasi-negotiable instruments, mere evidence of ownership.   Yet, while not within the category of negotiable instruments as defined by the law merchant, like warehouse receipts and bills of lading, they frequently convey as good a title as though they were actually negotiable.  This title is grounded in estoppel.''· The cases cited by the author sustain this text.

So, too, in Colebrooke on Collateral Securities (2 Ed.), sec. 314, it is said:

''The holder for value of a certificate issued by the proper officers of a corporation, without notice of fraud, or other defenses against the same, has a primary and direct claim, either to be admitted as a stockholder of the corporation, or where that is impossible, the limit placed by the charter upon the issue of stock having been reached, to such damages as shall be sufficient to recoup him for his loss.  Such holder for value,

without notice, upon a transfer of the shares of stock to his name upon the books of the company, is protected, although there be no authority on the part of the company to make the transfer because of the number of shares of stock already issued. Although a certificate of stock itself is not the title to the shares of stock, it is an authoritative declaration that such a title exists, which may operate as an equitable estoppel in favor of third persons who part with value in the belief that it is true.''

The doctrine is well worded in 2 Clark and Marshall on Private Corporations, sec. 430, thus:

''It is a well-settled principle that a certificate of stock issued by a corporation having the power under its charter to issue certificates in the form in which the certificate is issued is a continuing affirmation or representation of the ownership of the amount of stock therein specified by the person named therein, or his assignee and of his right to transfer the same, and that purchasers or pledgees of the certificate, or the stock represented by it, have a right to rely on such affirmation, without inquiry as to the validity of the certificate, unless they have actual notice of its invalidity, or the circumstances are such as to create suspicion, and put a reasonably prudent man upon inquiry. It is also a well-settled principle, as we have seen, that a corporation is liable to the same extent and under the same circumstances as a natural person, for every fraud which it commits, and for negligence and other wrongs, however foreign to its nature or beyond its granted powers the wrongful transaction or act may be. It follows from these principles that if a corporation itself, or an officer or agent for whose act it is responsible, fraudulently, or even by mistake and without any actual fraudulent intent, issues certificates of stock which are fictitious because they are in excess of its authorized capital stock, or otherwise unauthorized, it is liable in damages to bona-

fide purchasers or pledgees of such certificates who are deceived and injured by relying upon their genuineness. And in an action to recover damages, upon refusal of the corporation to recognize the validity of such a certificate, the corporation is estopped to set up as a defense that it had no power to create the stock or issue the certificate.''

The Ohio court in Railroad v. Bank, 56 Ohio St. l. c. 380, says:

''If the signatures of the president and the secretary are genuine and the seal has been affixed, and the paper on its face a certificate of stock, to require one without knowledge of any fraud in its issue, before purchasing it, to inquire of the company or any of its officers as to whether it is genuine, would be to require a degree of care not exacted in any other similar business transaction; and not observed by the most careful business men in dealing in the stock of a company. And hence the omission to make such inquiry is not such negligence as to deprive the holder of stock innocently acquired, of his remedy against the company on a refusal to transfer it as promised in the certificate. The fact that the certificate appears on its face to have been issued to the secretary as the owner of it, cannot be regarded as a suspicious circumstance, where, as in this case, he was not forbidden to hold stock, and, as found, 650 valid shares had been issued to him. [Railroad v. Bank, 60 Md. 36, 48; Titus v. Turnpike Road, 61 N. Y. 237, 242.] As the secretary had the right to hold stock, and did hold it, and as but one mode is provided by statute and the rules of the company for the issue of stock certificates, the fact that a certificate is issued in his favor, cannot, of itself, be adjudged a circumstance calculated to place an ordinarily prudent man on inquiry. This is shown by the fact that it did not excite inquiry in the minds of any of the numerous persons who became the owners of such stock, men accustomed to such business, and in-

cluding some of the most careful business men of Cincinnati. Protection against the possibility of such frauds, is provided in the requirement that the certificate shall be signed by the president as well as secretary. Either, by this requirement, must be deemed a sufficient check on the dishonesty of the other, where the company itself has provided no other check. Where, then, one of the officers becomes negligent, or conspires with the other to commit a fraud on the company by the issue of spurious stock, which comes into the possession of an innocent holder for value, who should more reasonably suffer the loss, than the company, who selected its president and secretary, and thus placed it in the power of one or both to practice the fraud? The law has always been careful to protect the rights of the innocent third person under such circumstances. When one by the fraud of another is induced to make and deliver him a deed, who then sells and conveys the land to an innocent purchaser for value, the latter is protected against the fraud that had been practiced by his grantor in acquiring the land; for the reason that having no knowledge of the fraud, he had the right to rely on the deed held by his grantor. This is the doctrine of innocent purchaser for value, and is of very general application. It rests upon the principle that where one of the two innocent persons must suffer by the wrongful act of another, he must bear the loss that placed it in the power of such person to do the wrong." And further on in the same case, and going to the question of negligence that court says:

"The general rule is that a corporation, like a natural person, is liable for the negligence of its agents, causing injury to others, where the act done is within the scope of their agency, whether the act be one of omission or commission. [Story on Agency, sec. 452; Tome v. Railroad, 39 Md. 36; Railroad v. Bank, 60 Md. 36, 43.] But in answer to the claim of liability on

the ground of negligence the company asserts that there is no privity between it and third persons who may deal in its stock; that a certificate of stock is not negotiable; and therefore that neither the company nor any of its agents were under any legal obligations in favor of persons dealing in its stock to supervise the acts of its president and secretary in issuing or in transferring stock.

"It is not necessary to determine whether a certificate of stock is a negotiable instrument, like a promissory note or bill of exchange. It is not a promise to pay money, and it has no period of maturity as such instruments have; yet as has been said, it is much like negotiable instruments. On its face, a certificate of stock is an evidence of the title of the person named in it to a certain number of shares, with an assurance to all persons that it will be transferred on the books of the company to any one purchasing it, on surrendering the certificate. In Bank v. Lanier, 11 Wall. 377, it is said: 'Although neither in form nor character negotiable paper, they (certificates of stock) approximate to it as nearly as practicable. It is easy to see why investments of this character are sought after and relied upon. No better form could be adopted to assure the purchaser that he can buy with safety. He is told under the seal of the corporation, that the shareholder is entitled to so much stock, which can be transferred on the books of the corporation, in person or by attorney, when the certificates are surrendered, but not otherwise. This is a notification to all persons interested to know, that whoever, in good faith, buys the stock and produces to the corporation the certificates, regularly assigned, with power to transfer, is entitled to have the stock transferred to him.' In re Bahia & San Francisco Railway Co., L. R. 3 Q. B. 584, is to the same effect; and it is there shown that the power of giving certificates is for the benefit of the company in general, as the effect of it is to make the shares of

greater value. It is said in Cook on Stockholders, section 415: 'To such an extent has the law of estoppel been applied to protect a bona-fide purchase of stock, that he is protected in almost every instance where he would be protected if he were purchasing a promissory note or other negotiable instrument.'

"The cases and authorities certainly show that the claim of the company that there is no duty (for that is all that can be meant by the use of the term privity), resting upon it or its agents, toward third persons, to observe care in the issue and transfer of its certificates of stock, and that as a consequence, it is not liable to them for negligence in such matters, is not well founded. From the character of the certificate it must be held to contemplate and know, that persons relying upon it will purchase the certificate in the market and meet with loss, should the person named in it not be the lawful owner of it. It must therefore be held to care in regard to this, and answer for any loss, the result of its negligence, or of its agents."

The doctrine of this case from Ohio and of the texts which we have quoted find ample support in a long list of cases collated and cited in plaintiff's brief, which list will be preserved by the reporter in his notes upon this opinion. The rule to be declared is, that if the certificate of stock fair upon its face, is, without notice and good faith, bought, or taken as collateral, and such certificate turns out to be spurious, then the corporation is liable for the damages occasioned, whether such certificate be fraudulently or negligently put in circulation. In the case at bar there was fraud upon the part of Newell and the grossest negligence upon the part of the vice-president Blair, and the other officers and directors of this defendant corporation. For these things the corporation itself is liable to the plaintiff. The certificate of stock was spurious, because in excess of the authorized capital stock. There is nothing in the record showing that plaintiff had any

notice of either the fraud of the one or the negligence of the other. Under such circumstances the corporation cannot escape liability, and the liability found in this case was only to the extent of reimbursing plaintiff for its actual loss and interest. This was proper.

II. It is next urged that the market value of the stock was not shown, and therefore plaintiff was not entitled to more than nominal damages. In terms the market value of the stock was not shown. On the contrary it appears from the record that **Damages.** there was a pool of most of this stock, and that the stock was not upon the market. The certificates recites the value of the stock, and the evidence shows that the money value of defendant's holdings is in excess of its capital stock. Under such circumstances the trial court was authorized to find damages in a substantial and adequate, rather than in a nominal sum.

III. It is urged that error was committed in refusing divers declarations of law asked for by defendant. In the main they state propositions of law contra to the views we have expressed as to what is the rule of law under these facts. Under the conceded facts of this record, and the rule of law we think applicable thereto, the plaintiff was clearly entitled to recover. The instructions refused announced contrary doctrines and were rightfully refused. The judgment *nisi* is clearly for the right party and it is therefore affirmed. All concur.