[S. F. No. 7971. In Bank.—February 19, 1919.]

## P. R. GREEN, Appellant, v. CARIBOU OIL MINING COMPANY (a Corporation), Respondent.

CORPORATIONS—FRAUDULENT ISSUE OF STOCK BY SECRETARY—PLEDGE FOR PERSONAL OBLIGATION—LIABILITY OF CORPORATION.—A corporation is liable to a pledgee of its stock fraudulently issued by the secretary of the corporation and pledged by him as collateral security for money borrowed for his own personal use, where the stock on its face bore the signatures of the vice-president and secretary and the corporation's seal, and the officers of the corporation permitted such official to issue stock.

ID.—RELIANCE UPON CERTIFICATE—RIGHT OF PLEDGEE.—A pledgee of corporation stock which on its face purports to be owned by the secretary has the right to rely on the honesty and fidelity of the secretary, upon the signature of the vice-president of the corporation, and upon the verity of the instrument presumed from the fact that the corporate seal was attached thereto.

ID.—TRANSFER OF STOCK—ENTRY ON BOOKS—LIABILITY OF CORPORATION FOR FRAUDULENTLY ISSUED STOCK — CORPORATION NOT PROTECTED BY CODE PROVISION.—The provision of section 324 of the Civil Code to the effect that a transfer of shares of stock "is not valid, except as to the parties thereto, until the same is" properly entered on the books of the corporation, cannot be invoked to protect a corporation from liability for the fraudulent issuance of stock by the officers of the corporation within the apparent scope of their authority.

ID.—FRAUDULENTLY ISSUED STOCK—BASIS OF LIABILITY OF CORPORATION.—The basis of the liability of a corporation for fraudulently

issued stock does not arise from anything that occurs in the making of a subsequent transfer, but it comes from the false issue itself, which is the act of the corporation officers within the apparent scope of their authority, which, in effect, is a representation by the corporation itself to the purchaser from the original holder that the false stock is genuine.

ID.—VALIDITY OF TRANSFER—REFUSAL TO ENTER ON BOOKS—CORPORATION NOT ESTOPPED BY RULE.—The rule holding a corporation liable in damages for fraudulently issued stock does not estop the corporation from disputing the validity of a transfer or from refusing to enter the same on its books, but only from disputing the authority of its own officers to issue stock.

ID.—STOCK ISSUED TO OFFICER—PLEDGE FOR OWN USE—LIABILITY OF CORPORATION.—The rule that where a third person deals with the officers of a corporation concerning the property of the corporation for a consideration personal to such officer and not for the benefit of the corporation, such third person, being aware of or having reasonable cause to believe the fact, is bound to inquire as to the authority of such officer to make such disposition of the corporate property, is not applicable to a case where the officer to whom the stock had been issued pledged it to borrow money for his own use, and it appeared on the face of the stock to have been the property of such officer for more than two months prior to the pledge.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. Frank J. Murasky, Judge. Reversed.

The facts are stated in the opinion of the court.

Byrne & Lamson, for Appellant.

Sullivan & Sullivan and Theo. J. Roche, for Respondent.

H. U. Brandenstein, *Amicus Curiae.*

SHAW, J.—From further consideration of this case upon the rehearing, after decision in the district court of appeal, we are satisfied with the opinion of that court written by Mr. Justice Beasly, and we now adopt it as the opinion of this court. It is as follows:

"This is an appeal from a judgment which followed an order of the court sustaining a demurrer to plaintiff's second amended complaint, the plaintiff declining to further amend.

"The complaint charges in substance that one James H. Lewis executed his promissory note to the plaintiff in the sum of $1,750, for which plaintiff loaned Lewis the sum named, and secured the note by what purported to be a certificate representing three thousand five hundred shares of stock in defendant company. Lewis was at the time of this transaction the secretary and transfer agent of the defendant. The certificate was taken from the company's stock certificate book, bore the signature of Lewis as secretary, and of J. H. Dearin as vice-president, the president of the company being unable at the time to act, and also bore the company's corporate seal. The consideration for the note was paid to Lewis by the plaintiff upon the faith and security of this certificate and because he believed it to be a valid certificate of stock in the defendant company. The note was never paid but has been reduced to judgment, and the stock was at all times worth more than the principal and interest of the note. Lewis is insolvent. By reason of the fact that the certificate is fraudulent, the plaintiff is unable to sell the certificate as pledgee and thus realize the amount of his note. It is further charged that the stock was fraudulent, and that the execution and issuance of the certificate were unauthorized by the defendant; that Lewis procured the issuance of the stock for the purpose of enabling him to hold himself out as the owner thereof; that for a long time prior to the date of issuance of this certificate the president and vice-president and directors of the defendant corporation negligently failed to examine or supervise the certificate books and records of stock transfers of the corporation; that an examination of those books and records, if made, would have disclosed to those officers before that date that numerous other fraudulent stock certificates had been in like manner issued by Lewis; that Dearin, the vice-president, negligently affixed his signature to the certificates without trying to ascertain or knowing whether they were regularly issued or fraudulent or not, or whether issued from the treasury of the defendant pursuant to authority, or in exchange for surrendered certificates, and without making any inquiry or investigation whatever.

"The prayer of the complaint was for judgment for the $1,750, and some other relief not important at this time.

"The case is one of first impression in this state, but the question has been determined in favor of the plaintiff in well-

reasoned opinions in the following cases among others, namely: *Cincinnati etc. Ry. Co.* v. *Citizens' National Bank of Cincinnati,* 56 Ohio St. 351, [43 L. R. A. 777, 47 N. E. 249] , *National Bank of Webb City* v. *Newell-Morse Royalty Co.,* 259 Mo. 637, [168 S. W. 699], and *Havens* v. *Bank of Tarboro,* 132 N. C. 214, [95 Am. St. Rep. 627, 43 S. E. 639]. It seems hardly necessary to recite the facts of those cases, as they were substantially the same as the facts of this case. In each of them the court placed its decision upon the application of the simple and just principle of the law that whenever one of two innocent parties must suffer by the action of a third, he who by his negligence has enabled such third person to occasion the loss must bear it; and in *Havens* v. *Bank of Tarboro, supra,* it was added that where the secretary issued the certificate and delivered it to a third party who acted without knowledge and in good faith, paying value for it, such party had the right to act upon the presumption that the representations of such certificate were truthful and not false and fraudulent, and the company having confided to him the trust of executing the business, the agent was held out to the public as competent, faithful, and worthy of confidence; and that though he deceived both his principal and the public by forging and issuing false certificates, it is but reasonable that the principal, who placed him in the position to perpetrate the wrong should suffer the loss. These cases are rich in quotable arguments supporting the doctrine that the defendant company, under the circumstances of this case, is liable to the pledgee of its stock where the stock was fraudulently issued by its officer intrusted to issue it. The plaintiff in this case relied, and had a right to rely, upon three things in taking this certificate in pledge. He had first the right to rely on the honesty and fidelity of Lewis as secretary of the corporation; second, he had the right to rely upon the signature of the vice-president of the corporation, and third, he had the right to rely upon the verity of the instrument presumed from the fact that the corporate seal was attached thereto. One purpose of the signature of the vice-president to the certificate was, among others, to protect the public and the company against possible fraudulent acts of the secretary. That the vice-president of this company was culpably negligent, as were the officers of the company also, in not looking to their books appears from the allegations of the complaint. It is therein alleged that

they negligently permitted the secretary to issue this stock, and negligently failed to examine their books theretofore, and that had they so examined them, the fraud would have been discovered, and the company and the plaintiff protected against it.

"In order to escape the logic and rule of the cases cited the defendant relies upon three or four cases, the first of which is *Moores* v. *Citizens' Nat. Bank,* 111 U. S. 156, [28 L. Ed. 385, 4 Sup. Ct. Rep. 345]. That case is distinguishable from the case at bar in this, that the court found, according to the fact, that the offending secretary was the authorized agent of the plaintiff in securing the issuance to her of certain stock of the corporation. From a misconception of the facts of that case and the rule therein laid down by the supreme court of the United States have arisen three or four other cases and numerous text-book quotations, where the general rule of law, that where one deals with an agent concerning a matter affecting his personal interest he is not justified in relying on the agent's statements and actions as being those of the principal, but must inquire of the principal himself, or of some disinterested agent having the power to speak for him, is applied to conditions of fact very like those now under consideration. But the application of this principle of law to such facts has been brought about, as we have said, by a misapprehension of the scope of the case of *Moores* v. *Citizens' Nat. Bank, supra,* and of the facts with which it dealt. We do not deem it necessary to discuss those cases further than to say that they have in our judgment unduly extended the application of that rule, and that it is not applicable to the facts of the case at bar.

"It follows that the demurrer should have been overruled."

In its petition for rehearing the defendant insists that the doctrine stated in the foregoing opinion is contrary to the provision of section 324 of the Civil Code, to the effect that a transfer of shares of stock "is not valid, except as to the parties thereto, until the same is" properly entered on the books of the corporation. In support of this claim it refers to *Whitfield* v. *Nonpariel etc. Co.,* 67 Wash. 286, [41 L. R. A. (N. S.) 187, 123 Pac. 1078], a case which, though cited in the briefs, is not noticed in the opinion of Justice Beasly. That case supports the respondent's claim, but we cannot agree with its reasoning. It rests in part on the fact that the Washington statute (Rem. & Bal. Code, sec. 3693), similar to section 324,

was enacted long after the rule was established holding a corporation liable in damages for issuing a false certificate of stock, from which the inference was deduced that the purpose of the statute was "to relieve the corporation of the hardship of the rule as well as to protect it from liability from fraudulently issued stock." The fact stated may have been true of the Washington statute, but it is not true of the California statute on the subject. Section 324, enacted in 1872, was, so far as this provision is concerned, but a re-enactment of the statute of 1853. So far as we are aware or have been advised, the rule referred to was not established by any decision until many years later than 1853. The statute could not have been intended to change a rule that had never been announced. Furthermore, we think the Washington court mistook the basis of the liability of the corporation for fraudulently issued stock. It does not arise from anything that occurs in the making of a subsequent transfer. It comes from the false issue itself, which is the act of the corporation officers within the apparent scope of their authority, which, in effect, is a representation by the corporation itself to the purchaser from the original holder that the false stock is genuine. The rule does not estop the corporation from disputing the validity of a transfer or from refusing to enter the same on its books, but only from disputing the authority of its own officers to issue stock which it is admitted they did issue.

The main reason for ordering a rehearing was a doubt whether the rule could be applied to a case where the officer to whom the stock had been issued pledged it to borrow money for his own use. We are satisfied that this has no bearing on the question. Where a third person deals with the officers of a corporation concerning the property of the corporation for a consideration personal to such officer and not for the benefit of the corporation, such third person, being aware of or having reasonable cause to believe the fact, is bound to inquire as to the authority of such officer to make such disposition of the corporate property. But here the stock was not the property of the corporation. On its face it appeared to have been the property of Lewis for more than two months prior to the pledge. The fact that it had been issued to Lewis and that he was then the secretary of the corporation did not give cause for suspicion that it belonged to the corporation, for it is usually the fact that the leading officers of a corporation own

stock therein, and the certificate was itself the solemn declaration of the corporation, under its seal, that the stock belonged to Lewis, a declaration on which third persons had the right to rely.    (1 Morawetz on Corporations, sec. 185.)

The proposition that a corporation is estopped to deny that its officers were authorized to issue stock after it has passed into the hands of an innocent purchaser for value, and the proposition that the mere fact that it was issued to one of its own officers raises no suspicion of their want of authority to issue it, are both decided in *Smith* v. *Martin,* 135 Cal. 251, [67 Pac. 779].    (See, also, *Anglo-California Bank* v. *Granger's Bank,* 63 Cal. 364.)

The judgment is reversed.

Sloss, J., Wilbur, J., Melvin, J., Lennon, J., Lawlor, J., and Angellotti, C. J., concurred.