[Civ. No. 4574.  Second Appellate District, Division One.—March 30, 1927.]

## OTTO J. BOSS, Respondent, v. SILENT DRAMA SYNDICATE (an Unincorporated Association) et al., Appellants.

[1] Corporations—Issuance of Stock by Unincorporated Association Without Permit — Fraud — Liability to Purchaser.—An unincorporated association which issues stock without a permit from the commissioner of corporations is liable to a purchaser of such stock for damages on account of fraud which arises from the false representation that the stock is genuine.

[2] Id. — Good Faith of Association — Reliance on Statement of Corporation Commissioner—Subsequent Procurement of Permit — Defense. — In an action for damages to a purchaser of stock in an unincorporated association arising out of fraud and deceit in issuing certificates of stock without a permit from the commissioner of corporations, neither the fact that the certificate was issued in good faith by the association and in reliance upon a statement made by the commissioner of corporations to the effect that no permit was necessary to enable the association to issue such stock, nor the fact that several months after the action was commenced by plaintiff the association secured from the corporation commissioner the necessary permit and thereupon, by amended answer to the complaint, offered to issue to plaintiff a valid certificate for the shares which he had purchased, is available to the association and its trustees as a defense to plaintiff's cause of action.

[3] Id. — Purchase of Certificate in Good Faith — Notice — Liability of Association.—In such action, the trial court's conclusion as to defendants' liability to plaintiff was supported by the evidence, where plaintiff paid cash to an existing shareholder for his certificate in good faith and without any notice or knowledge that the certificate was illegal and void, and believed and relied upon the issuance thereof to his damage.

[4] Id. — Reliance upon Validity of Certificate — Evidence. —In such action, plaintiff having paid for the certificate in question in cash at par value, his reliance upon the validity and genuineness of the certificate was shown.

[5] Id. — Statement in Certificate—Independent Investigation.— In such action, the certificate purchased by plaintiff being void

1. See 6 Cal. Jur. 779, 781.
5. See 6 Cal. Jur. 781.

because its issuance was unauthorized by the commissioner of corporations, the fact that on the face of the certificate there appeared a statement to the effect that the shares represented thereby were issued pursuant to the conditions contained in the trust agreement and declaration of trust did not require plaintiff to make an independent investigation.

[6] Id.—Beneficial Interest in Association—Transfer not Effected.—In such action, no beneficial interest in the association was transferred to plaintiff by virtue of the transaction which was void not only by the provisions of the Corporate Securities Act, but as well by judicial determination.

[7] Id. — Interest — Time—Judgments. — In such action, plaintiff's right to recover vested in him on the same day that the purported certificate of stock was issued to him, and he was entitled to interest from such day.

---

(1) 13 **C. J.**, p. 420, n. 77, p. 421, n. 81; 14 **C. J.**, p. 468, n. 40; 37 **C. J.**, p. 273, n. 75.    (2) 37 **C. J.**, p. 277, n. 47.    (6) 37 **C. J.**, p. 277, n. 43.

APPEAL from a judgment of the Superior Court of Los Angeles County.   Victor R. McLucas, Judge.   Affirmed.

The facts are stated in the opinion of the court.

Neil S. McCarthy for Appellants.

Harry K. Sargent for Respondent.

HOUSER, J.—At the time when the cause of action herein accrued the defendant Silent Drama Syndicate was an unincorporated association operating by virtue of a trust agreement under which defendants Graydon and Brown were its trustees.   The business or property of the syndicate was divided into shares of the par value of $100 each, of which one Keady was the owner of 220 shares evidenced by a certificate of stock to that effect.   For the sum of $500 in cash paid to him by Otto J. Boss (the plaintiff herein), Keady sold to Boss five shares of such syndicate; and thereupon Keady surrendered his certificate of 220 shares to the defendant Silent Drama Syndicate, which association, in lieu of said 220 shares, issued a certificate of stock to plaintiff for 5

---

6.   See 6 **Cal. Jur.** 780.

shares, and a second certificate to Keady for 215 shares. Approximately sixteen months thereafter plaintiff brought an action against all of said defendants for damages to him arising out of the fraud and deceit of said defendants in issuing the said certificates of stock. From a judgment rendered in favor of plaintiff, defendants appeal.

[1] It is admitted by appellants that at the time of issuing the certificate of stock to plaintiff no permit had been issued by the commissioner of corporations of this state by which the Silent Drama Syndicate was authorized to sell, offer for sale, negotiate, or issue any certificate of the said syndicate as provided by the Corporate Securities Act (Stats. 1917, p. 673).

In the case entitled *In re Girard,* 186 Cal. 719 [200 Pac. 593], the facts with reference to the association therein involved were similar to those herein. It was held (syllabus) that: "A sale by trustees, without a permit from the corporation commissioner, of unit shares or unit interests in a common-law trust company organized in pursuance of a declaration of trust executed between the trustees, is a violation of the Corporate Securities Act."

Section 12 of the Corporate Securities act provides that: "Every security issued by any company, without a permit of the commissioner authorizing the same then in effect, shall be void, . . . "

And by section 14 of the same act a penalty is prescribed as to "every officer, agent, or employee of any company, and every other person, who knowingly authorizes, directs, or aids in the issue or sale of, or issues or executes, or sells, or causes or assists in causing to be issued, executed, or sold, any security in nonconformity with a permit of the commissioner, . . . "

Furthermore, as is stated in the case of *Smith* v. *Bach,* 183 Cal. 259 [191 Pac. 14], "the general rule . . . is that where a statute provides or attaches a penalty to the doing of an act, the act is void." See, also, *Domenigoni* v. *Imperial Live Stock & Mortgage Co.,* 189 Cal. 467 [209 Pac. 36].

While, as suggested by appellants, much authority is available to the point that in an action for deceit, intentional fraud, rather than constructive fraud, is a necessary element to the maintenance of an action, nevertheless with reference

to the act by a corporation acting in excess of its powers in issuing certificates of stock, it appears to be well-established law that not only the corporation, but as well its officers so issuing such stock, are legally responsible therefor to purchasers in good faith, even though the act of the corporation be done through mistake and without any fraudulent intent. (5 Fletcher's Ency., Corporations, sec. 3493; 1 Cook on Corporations, 6th ed., sec. 292; 14 Cor. Jur., p. 468.)

In the case of *Green* v. *Caribou Oil Min. Co.*, 179 Cal. 787 [178 Pac. 950], it appeared that the secretary of a corporation fraudulently issued a certificate of stock therein to himself and that the vice-president of the corporation, acting in the absence of the president thereof, negligently affixed his signature to such certificate; that the certificate also bore the official seal of the corporation; that about two months after such certificate had been issued the secretary borrowed a sum of money from Green (the plaintiff) for which the secretary gave his promissory note to Green and pledged said certificate of stock as security for the payment of said note. It was held that the corporation was liable. In discussing the matter and in commenting upon a case theretofore decided by the supreme court of the state of Washington, the court said, in part: "Furthermore, we think the Washington court mistook the basis of the liability of the corporation for fraudulently issued stock. It does not arise from anything that occurs in the making of a subsequent transfer. *It comes from the false issue itself,* which is the act of the corporation officers within the apparent scope of their authority, which, in effect, is a representation by the corporation itself to the purchaser from the original holder that the false stock is genuine. . . . "

In principle, we can see no difference between the case last cited and the instant case. In the Green case, money was loaned in good faith on a false representation by the corporation issuing the stock; and in the instant case, instead of a loan being made on the stock, it was purchased outright on what in law amounted to a false representation. In the one case, the lender of the money had a right to rely upon the implied representation made by the corporation that the certificate of stock was genuine; and in the instant case, the plaintiff had a similar right not only as to the original

certificate for 220 shares standing in the name of Keady, but as well in the new certificate issued by the association to plaintiff. [2] We are of the opinion that neither the fact that the certificate was issued in good faith by the association and in reliance upon a statement made by the corporation commissioner to the effect that no permit was necessary to enable the association to issue such stock, nor the fact that several months after the action was commenced by plaintiff the Silent Drama Syndicate secured from the corporation commissioner the necessary permit and thereupon, by amended answer to the complaint, offered to issue to plaintiff a valid certificate for the five shares which he had purchased, is available to the defendants as a defense to plaintiff's cause of action. As declared in numerous cases cited in each of the several authorities heretofore noted herein, the question of good faith by a corporation in issuing what in law is a void certificate of stock is wholly immaterial; and the offer by the corporation of reimbursement to plaintiff by issuing a new certificate to him (especially in the absence of a showing that such corporate certificate was at least equal in value to the amount of plaintiff's investment), would also be unavailing as a defense. The cause of action had accrued to plaintiff long before any attempt was made by the association to obtain the permit necessary to enable it to legally issue its certificate of stock. Besides, the original act having been void, it was incapable of later affirmance or ratification by the association. In addition thereto, it is clear that between the date when the certificate of stock was originally issued and the date of its offer to plaintiff to reissue to him a valid certificate, the association had no right to speculate on whether the value of the stock would remain stationary or whether it would increase or decrease. While it may be assumed that when plaintiff purchased the stock it was worth its face value, there is no evidence upon which a conclusion could rightly be based that at the time the defendants offered to reissue to plaintiff a valid certificate of stock in lieu of the void certificate, the stock was worth par, or, indeed, had any value whatsoever.

[3] It is also urged by appellants that in purchasing the stock in question plaintiff did not rely upon the representations made by the association, but relied solely upon repre-

82 Cal. App.—8

sentations made to him by Mr. Keady. With reference to the facts, the finding by the trial court was that ''plaintiff paid to one L. Y. Keady $500 in cash for said certificate in good faith and without any notice or knowledge, that the said certificate was illegal and void and believed and relied upon the genuineness thereof to his damage.'' It thus appears that the evidence was sufficient to support the conclusion reached thereon by the trial court.

[4] Appellants advance the further contention that in purchasing the certificate of stock plaintiff did not rely upon its validity and genuineness. But it is manifest that to attribute such a state of mind to the purchaser of stock in a corporation would import to him a mentality bordering on imbecility. It would seem incredible that anyone in his right mind would buy stock in a corporation or an association of the character of the defendant syndicate if even a suggestion were present regarding the validity or genuineness of the certificate representing the shares of stock which he was about to purchase. Had plaintiff exchanged some ''wildcat'' mining stock or other commodity of equally doubtful value for the certificate in question, the transaction might have afforded some basis for appellants' criticism. But in view of the fact that plaintiff's purchase was for real money, and that far from buying the stock at a discount, he paid par value for it, little if any doubt can exist as to the estimate which plaintiff placed upon the genuineness and validity of the certificate of stock purchased by him.

[5] Furthermore, it is claimed by appellants that because on the face of the certificate there appeared a statement to the effect that the shares represented thereby were issued pursuant to the conditions contained in the trust agreement and declaration of trust, the purchaser was placed on notice and required to make an independent investigation. But the difficulty with such a conclusion is that both by statute and by judicial declaration the certificate was void. It is manifest that, so far as the purchaser was concerned, such a statement represented nothing other than an implied representation on the part of the association that the certificate was genuine and that the association had the right to issue it. In other words, the language of the ''notice'' conveyed to the mind of the purchaser the fact that in accordance with the

powers vested in the trustees by the provisions of the trust agreement, the trustees were issuing certificates of shares or units in the trust property as evidence of the ownership therein of the respective holders of such certificates; but which from a legal standpoint, without the necessary permit from the corporation commissioner so to do, was an act forbidden by law and consequently was of no validity.

[6] Appellants advance the further point that plaintiff is the equitable owner of an undivided beneficial interest in the trust estate which he contracted to purchase from Keady, and that he has not been damaged by reason of the premises.

But it is difficult, if possible, to understand how any beneficial interest in the association could have been transferred to plaintiff by virtue of a transaction which was void not only by the provisions of the statute, but as well by judicial determination, as hereinbefore set forth. If equitable interests in unincorporated associations could be sold and transferred without the necessity of complying with the provisions of the statute, the entire purpose of the statute would be rendered nugatory and of no effect. If any meaning is to be credited to the language of the statute regarding the invalidity of attempted sales of "securities" of such an association without first having obtained from the corporation commissioner the necessary permit to make the same, it must be that such language carries the significance that any such act is an absolute nullity and consequently transfers no rights, nor incurs any obligations or duties so far as the person is concerned to whom such attempted sale is made. Without any consideration moving to him, plaintiff was induced to and did pay his money on what in law was a false representation upon which he relied. His damage follows as a matter of course.

It is finally urged by appellants that plaintiff should not have been allowed interest on his claim prior to judgment.

[7] Section 3287 of the Civil Code, in part, provides that: "Every person who is entitled to recover damages certain, or capable of being made certain by calculation, and the right to recover which is vested in him upon a particular day, is entitled also to recover interest thereon from that day, . . . "

It is clear that plaintiff's "right to recover . . . vested in him upon a particular day," to wit, on the same day that the purported certificate of stock was issued to him; hence his right to interest from such day is controlled by statute. On principle, to the same effect, see *Tome* v. *Parkersburg R. R. Co.*, 39 Md. 36 [17 Am. Rep. 540]; *National Bank of Webb City* v. *Newell-Morse Royalty Co.*, 259 Mo. 637 [168 S. W. 699].

No prejudicial error appearing, the judgment is affirmed.

Conrey, P. J., and York, J., concurred.