[Civ. No. 6515. First Appellate District, Division One.—March 2, 1929.]

MARIAN F. BREWIS, Appellant, v. J. C. TOFFELMIER et al., Respondents.

Edwin H. Williams for Appellant.

Roscoe D. Jones and J. M. Koford for Respondents.

BARNARD, J., *pro tem.*—In this action recovery is sought for damages claimed to have been suffered by plaintiff through certain fraudulent misrepresentations, alleged to have been made in pursuance of a conspiracy entered into by defendants. The complaint alleges that defendants were interested in the ownership of stock in the San Leandro Canning Company, which company owned certain assets, including a canning plant and a stock of finished canned goods. That said plant had been operated at a loss during the year 1920 and said company was at all times after November 15, 1920, in a failing condition and unable to meet its bills. That the defendants, well knowing said conditions, entered into a conspiracy to organize another company for the purpose of taking over the old company at a price far in excess of its value, and to sell stock in the new company to plaintiff and others at an inflated valuation, to the end that they might dispose of the old company, notwithstanding its insolvency, at a great profit. That, in pursuance of this conspiracy, defendants organized the San Leandro Canning Company, Inc., became the majority of its board of directors, and controlled all of the acts and business of the new corporation. That on November 17, 1920, defendants represented to the commissioner of corporations that the old company possessed assets of the value of $135,000 over its debts, including $132,500 worth of finished canned goods on hand, and secured a permit allowing the new company to

take over the old company and permitting the sale of stock in the new company.

It is further alleged that after said takeover defendants issued and caused to be delivered to plaintiff a printed prospectus, representing, in brief, that although 1920 was a bad year in the canning industry, the old company in six weeks of operation had made a net profit of over ten per cent; that the new company was in a sound and solvent condition, and that the directors were themselves selling the stock to save for the company the amount of the usual broker's commissions. That defendants, in pursuance of said conspiracy, caused two of their number to call on plaintiff on December 22, 1920, after said permit to sell stock was issued and after she had received a copy of said prospectus, and caused them to represent to her that the old company had made a large profit in 1920 from the sale of its entire stock of finished canned goods; that the new company was in a sound condition; that many wealthy local people had invested in the stock, and that the new company had taken over the old company because its business was profitable and they desired further capital for expansion, and for no other reason. It is then alleged that each of said representations was false, was known to the defendants to be false and was made for the purpose of defrauding plaintiff. That, in pursuance of the conspiracy, no copy of the corporation commissioner's permit was ever shown or delivered to plaintiff. That plaintiff believed and relied upon the representations aforesaid, and paid $3,000 for thirty shares of said stock, to her damage in that amount, the same being valueless. And that in March, 1922, plaintiff, for the first time, discovered the falsity of said representations and the facts showing said conspiracy.

In their answer defendants denied having made any of the misrepresentations alleged, and denied all allegations of conspiracy. Among other things, the court found that none of the defendants had entered into any conspiracy, and that no acts or things were done pursuant to any conspiracy whatever; that at the time of the takeover the old company possessed assets of over $135,000 in excess of its liabilities; that its stock of finished canned goods was then of the value of $132,500.02; that its entire stock of canned goods had been sold "subject to approval of price," and that this was at that time the usual method in the industry; that a profit of

$12,605.71 had been made in 1920; that at the time the prospectus was issued it was the intention to sell stock in the new company without the payment of broker's commissions, but the attempt to do so proving unsuccessful, the prospectus was withdrawn on November 17, 1920; that the only commissions paid were in accordance with the permit issued by the commissioner of corporations; that the stock purchased by plaintiff was at that time worth its face, and that no representation made by any defendant was false when made. This appeal is from the judgment in favor of defendants, based on the findings.

As will be noted, this action is not one based on rescission, and is not against the corporation, the salesmen who sold the stock or the board of directors. It is brought against certain individuals who constituted a part of the board of directors of a corporation, and is based entirely on the theory that the defendants entered into a conspiracy to make the alleged misrepresentations and defraud the plaintiff. While the charge of conspiracy makes necessary an examination of all the facts and circumstances, including the misrepresentations claimed, it must be kept in mind that each misrepresentation charged is to be considered, not as such a charge against the particular individual involved in each separate instance, but in the light of its effect on the general charge of conspiracy. Of necessity, the decision of this case involves much more comment on facts than on law.

It is urged that the evidence shows that the corporation stock in question was sold prior to the issuance of a permit by the commissioner of corporations, and for that reason, under authority of *Boss* v. *Silent Drama Syndicate,* 82 Cal. App. 109 [255 Pac. 225], this case must be reversed. The permit to sell stock was issued on December 13, 1920. Considerable evidence was introduced seeking to prove the purchase of plaintiff's stock at an earlier date. But the complaint alleges that the representations leading to the purchase were made "after said permit was issued as aforesaid." And the plaintiff testified that the first conversation she had with anyone about the company was on December 22, 1920, and that she signed the subscription agreement on that day. The evidence sustains the finding of the court that the plaintiff subscribed for the first of her stock on December 22, 1920, and the rest in March, 1921.

■ The most serious question of law involved in this appeal arises from the fact, as properly found by the court, that no copy of the corporation commissioner's permit to sell stock was shown or delivered to plaintiff prior to the purchase by her of the stock in question. The permit, under which the sale was made, was in the usual form and required that this be done. It is strenuously urged that on the authority of *Boss* v. *Silent Drama Syndicate, supra,* and *Otten* v. *Riesener Chocolate Co.,* 82 Cal. App. 83 [254 Pac. 942], this not only renders the sale void, but permits the plaintiff, without rescission, to recover damages for fraud. The principles laid down in *Boss* v. *Silent Drama Syndicate* do not apply here, the court having found on sufficient evidence that the stock was not sold prior to the issuance of a permit. *Otten* v. *Riesener Chocolate Co., supra,* held that where a permit has been issued, but a copy thereof has not been shown or delivered to the purchaser, the contract of sale is void, and a rescission may be had. Apparently this remedy was available to the plaintiff in the instant case, subject to the usual rules in such cases. However, this last case is not authority for the proposition that in such a case as this, without rescission, a plaintiff is entitled to recovery, as a matter of law.

Under the rule laid down in *Boss* v. *Silent Drama Syndicate, supra,* where stock has been sold before a permit has been issued, an action for damages may be maintained against the vendor company and its officers, on the ground that such an issue of stock is virtually a representation by the company and its officers that the stock is valid, when, in fact, it is void and nonexisting. To hold that this same reasoning applies to a case where the permit has been issued and where the stock itself may be properly issued, but where the permit has not been complied with in that a copy thereof has not been shown to the purchaser, would be an extension of this rule requiring careful consideration. Such an extension of the rule is not necessary to protect the purchaser, as he has an ample remedy in his right of rescission. (*Otten* v. *Reisener Chocolate Co., supra.*) His stock is not something that does not exist, as in the other case, but is properly issued even if not properly delivered, and to so extend the rule would be to permit him to sue for damages, in the amount of what he had paid, while still retaining the

stock actually bought, and presumptively worth what he paid for it. We think that such is not the law, but that in such a case the purchaser is confined to his remedy of rescission, with full protection to himself and no injustice to the vendor.

If it be assumed, however, that the rule in *Boss* v. *Silent Drama Syndicate* should be thus extended, it would still not be controlling in this case. Even if it should be held that such a fraud as may be said to arise from a constructive misrepresentation that shares of stock are valid when in fact they are nonexistent, also arises in a case where a permit to sell exists, but a copy of the same is not shown or delivered to the buyer, and that, therefore, an action for damages, as well as one for rescission, would lie, still it would be quite another thing to hold that this applied or was controlling in such an action, not against the company or corporation, and its officers, but against a selected list of part of the directors of such a company, especially where, as in this case, it is set up not as a direct allegation against the parties to the particular acts complained of, but as a part of general charges of conspiracy. In our opinion, the failure to show to the purchaser a copy of the permit to sell stock, under the pleadings herein, does not as a matter of law entitle plaintiff to recover, but is only one matter for consideration in relation to the charge of conspiracy.

A large part of appellant's contentions relate to certain claimed misrepresentations appearing in various advertisements in newspapers and on moving-picture screens to the effect that a ten per cent dividend had been paid by the old company in 1920. The facts in this regard were not pleaded, and were admitted in evidence only as going to show the intent, or existence of a conspiracy. At most, their publication was brought home only to one or two of the defendants and not very definitely as to them.

Another very considerable part of such claimed misrepresentations centers about the printed prospectus above referred to, which is alleged to have been delivered to the plaintiff by the defendants. But the plaintiff testified she received it from her brother, and not from the defendants. In any event, she testified: "I did not make the investment because of the prospectus." The case is practically reduced

to such misrepresentations as it is claimed were made to plaintiff orally, and in pursuance of the conspiracy alleged.

The most important of these, and, indeed, the gist of this action, is the claim that plaintiff was deceived by being told that the company had made a net profit of over ten per cent the preceding year; that the finished canned goods on hand were of the value of $132,500, and were all sold; and that the company was in a sound and solvent condition. The record contains evidence that at the time of the take-over the liquid assets of the company were over $28,000 more than its current liabilities; that its capital was then intact with a surplus of $37,827.58; and that a profit of $12,605 had been made the preceding season on a capital of less than $100,000. The evidence further shows that the entire stock of finished canned goods on hand had been sold, and were awaiting shipment, it being true, however, that these had been sold "subject to approval of the price," which is shown, without contradiction, to have been the usual practice in the canning industry at that time. These facts and figures are bitterly assailed, and it is apparent that the contrary views held by appellant on these points are responsible for this controversy. The evidence shows that these canned goods had been sold in the manner just noted; that they were carried on the books at the list prices issued in 1920 by the California Packing Corporation; that the above valuation was in accordance with those prices; that as rapidly as possible they were then being delivered, and continued to be delivered for months later, at those prices; that during all of this time these goods were considered by all of the defendants to be of that value, and as having been sold; that subsequently the market dropped and various buyers canceled their orders, and a new list was received on May 9, 1921, showing a radical reduction in price; and that while some of the goods were delivered, the market continuing to drop, a large quantity remained on hand at a great depreciation in value. With the dropping of prices and the canceling of the orders, the company became unable to pay its debts. About March, 1922, or soon after, the defendants resigned from the board of directors of the company, a new board took charge, and shortly thereafter the canning plant was sold for the debts. Appellant sees in these facts conclusive proof that defendants knew in December, 1920, and

in March, 1921, what was soon to take place, and insists that the only conclusion to be drawn therefrom is that defendants conspired together to get from under a disastrous situation, by defrauding plaintiff and others through selling them stock in the enterprise. But the inference can also be fairly drawn from these and other facts in evidence that appellant is trying to put back into 1920 conditions that developed in 1921, and later. No proof of advance knowledge on the part of defendants, or any of them, is shown by the record, other than the inference appellant would draw, as above stated. And any conflict in the evidence, or any legitimate inference therefrom, has been by the trial court resolved in favor of defendants.

An additional misrepresentation urged is a statement in the printed prospectus that no commissions would be paid for the sale of stock in the company, whereas commissions were actually paid. The defendants testified that, after a trial, this plan failed and distribution of the prospectus ceased, and arrangements to pay commissions were made. Appellant's contention that this was a continuing misrepresentation, unaffected by any withdrawal of the prospectus in the absence of notice to her, is of no avail because the prospectus was not given her by any of the defendants and she disclaims having bought because of it. It is true her testimony is that she was told the same thing by defendant Faustina, but he denied this, and the finding of the court is conclusive on that point. We may also add our doubt whether this is a material false representation, in any event. (*San Leandro Canning Co., Inc.*, v. *Perillo*, 84 Cal. App. 635 [258 Pac. 670].)

Again, it is urged that she was told by one of defendants that new capital was being sought for the purpose of expanding the business of the company, whereas later it developed that the money was used to pay debts. If this be true, at that time (December, 1920) apparently all parties thought the returns from the sale of canned goods would take care of all debts, and there is no evidence that the intention in selling stock was not to provide for such expansion. While such a statement might have seemed more questionable in March, 1921, when plaintiff purchased her last stock, even then the original list prices were still prevailing, and no evidence exists that defendants considered the need for cash

at that time as more than a temporary condition. But again we have a denial of the fact by the defendant in question and another conflict.

A number of claims of error in the exclusion of particular evidence are made, which we find without merit. Most of these were attempts to introduce, as evidence of facts existing in 1920, compilations made much later, by other people, with the addition of the results of changed conditions.

◼ Viewing the entire case from the standpoint of fraudulent misrepresentations alone, and in addition to the matters above commented on as reducing the various charges to what is no more than a series of conflicts in the evidence, there is another consideration which supports the judgment of the trial court. It is elementary that in order to recover for fraudulent misrepresentation, it must be shown that the party claiming relief must have believed in and relied upon the same. The plaintiff has so alleged in her complaint, but the court has found to the contrary. The plaintiff apparently did not believe the two defendants who sold her the stock, on one of the main representations, as she testified: "Mr. Perillo and Mr. Faustina told me among other things that the market for canned goods was bright and good. And I told them that the market would be very poor in my judgment. It was right after the war and inferred from that that things would be bad." She further testified that she accepted a discount as an "inducement" for her last purchase, and that she did not buy because of the prospectus. Again, she testified, "I was told that Mr. Carey and Mr. Hale had bought stock, and thought that if they had bought stock it would be perfectly safe for me to follow their example. Q. Then that is the thing that made you buy the stock? A. Not only that, but other parties who had bought, prominent people, and I felt that they always knew how to invest their money wisely, so I felt that if they invested at that time it would be a wise thing to follow their example." In the light of this testimony and the surrounding facts, including the fact that the complaint was not filed for more than three and a half years after the acts complained of, and nearly two and a half years after their alleged discovery, the court, with all the witnesses before it, may well have been convinced that the moving

cause of her purchase of stock was the desire to follow the example of supposedly successful people, rather than any reliance on any representations made to her by defendants, and the evidence is sufficient to support the court's finding.

As we have pointed out, this action is based not on any misrepresentations of particular individuals among the defendants, but upon charges of conspiracy upon the part of all of them to do or procure the doing of the acts charged. In addition to the considerations already noted, the trial court has found that no such conspiracy existed. The only evidence of such conspiracy consists in the facts above briefly set forth, including, as pointed out, a portion thereof admitted for that purpose only, and the inferences that could be drawn therefrom. Opposed to this, we find the denials of all of the defendants, such doubt as to the making of the representations, the reliance thereon, and the effect thereof as are above commented upon, and the possible contrary inferences from all of the circumstances, including the fact that as opposed to the claim that defendants originated this scheme in order to get from under and sell out at an inflated valuation, the evidence shows the defendants sold none of their own stock and themselves lost their entire investment of nearly $100,000. The evidence shows the reverses of 1921 and later were as much a surprise and disappointment to defendants as to plaintiff.

Where a plaintiff, instead of availing himself of so plain a remedy as rescission, retains the property, and waits more than three years, possibly to see the outcome of the venture, not only is additional doubt thrown on the truth of such charges as here made, but the equities cannot be said to unquestionably favor going to the extent asked, in such an action as this, under the facts here shown. This entire case presents a question of conflicting evidence which must be the matter of argument in another than an appellate court. From a study of the record we feel that not only are the essential findings of the trial court sustained by the evidence, but that a somewhat closer question would have been presented had they been the other way.

The judgment is affirmed.

Tyler, P. J., and Knight, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on April 1, 1929, and a petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on April 29, 1929.

All the Justices present concurred.