[Civ. No. 6874. Second Appellate District, Division Two.—February 27, 1932.]

GROOVER O'CONNELL et al., Respondents, v. UNION DRILLING AND PETROLEUM COMPANY (a Corporation) et al., Appellants.

Newby & Newby and Dee Holder for Appellants.

Neil S. McCarthy, Earl L. Banta, Harmel L. Pratt, and Howard P. Hall for Respondents.

CRAIG, J.—A petition for rehearing herein was granted because we entertained some doubt concerning the correctness of the opinion heretofore filed, but upon further consideration we have concluded that the original opinion was correct, and it is now adopted as the opinion herein, as follows:

Certain real property in Los Angeles County held under lease by the appellant corporation, of which the individual appellants were directors, was acquired by them for the drilling of an oil-well. The respondents purchased certificates representing interests known as overriding royalties therein. The well was not completed, demand for a return of the moneys paid for said certificates was refused, and in an action therefor judgment was rendered in favor of the plaintiffs, from which the defendants appealed.

Following negotiations between appellant McCaslin and respondent O'Connell, in the presence of one Charles A. Draper, during which the former offered to sell certificates, each representing a "gross over-riding royalty interest equal to one per cent (1%) of the gross proceeds received

from the sale of any and all oil, gas or other hydrocarbon substances produced, saved or sold", to quote from the testimony, McCaslin agreed: "O'Connell if you won't mention a price and take five percentages, I will let you have them for eight hundred dollars a per cent. . . . The money is going to be put in trust and can be spent only for drilling this well for the protection of investors, and *in the event the well is not drilled the money will be returned* to the investors. . . . I kept the lease in my own hands. . . . You don't need to worry about this well going down. It is up to me to put down the well."

Thereupon, respondent O'Connell made and delivered to McCaslin his check:

"Pay to the order of Union Drilling and Petroleum Co. $4,000.00 Four Thousand and no/100 Dollars.
                    "(Signed) G. O'CONNELL".

Which was thereafter indorsed:

"Pay to the order of H. E. MacAdams, Union Drilling & Petroleum Co.
                    "W. E. McCASLIN, Pres.

"E. B. KENNEY, Secty.
"H. E. MACADAMS."

Respondent at the same time received from McCaslin five documents, each reciting that the "Union Drilling & Petroleum Company, a corporation, assignor herein, for and in consideration of the sum of ten dollars ($10.00) and other good and valuable consideration to it in hand paid by the assignee herein, Groover McConnell and Maybel McConnell, joint tenants, the assignee herein, a gross over-riding royalty interest equal to one per cent (1%) of the gross proceeds received from the sale of any and all oil, gas or other hydro-carbon substances produced, save and sold from [lands described] . . . to be produced and saved under the terms of a certain oil and gas lease, executed by W. W. Bucknam, et al., as lessor, to Union Drilling & Petroleum Company, a California corporation, as lessee, . . . *The assignor hereby warrants and declares that it is the owner of the royalty interest hereby assigned, and that it has not heretofore sold, mortgaged or otherwise encumbered same.* In witness whereof, the said Union Drilling & Petroleum Company has hereunto affixed its corporate name and seal

by its proper officers thereunto duly authorized, this 10th day of April, 1927, at Los Angeles, California. [Signed] Union Drilling & Petroleum Company, by W. E. McCaslin, President. E. B. Kenney, Secretary.'' The names of the assignees were then and there inserted by McConnell, and it is not denied that said assignments had previously been in possession of one F. S. N. Parkinson. Respondent testified that Parkinson was present at the time of the assignments to respondent, and asked the latter's reason for inserting the name, to which O'Connell replied: ''I am going to record them . . . tomorrow. . . . If they are as good as that check, they are worth recording.'' He further swore positively that MacAdams was at no time present, that he had no part in the transaction, and was not mentioned at any time, by any of the parties. In response to repeated inquiries by respondent, McCaslin about three months thereafter admitted, ''We decided not to drill it, . . . It don't look good over on that side now. . . . Don't worry about your money. You will get your money back. I will attend to it right away. . . . I want to get this cleared up. The money is just as good as if you had it in your hand.'' Respondent thereafter received a letter from the appellant corporation as follows: ''We wish to inform you that this company received none of the money you paid for your interests. They were originally issued by us to H. E. MacAdams pursuant to a contract between us for the drilling of the well and in consideration of work done by him thereunder. Mr. MacAdams sold you these percents and we therefore suggest that you take the matter up with him.''

Notwithstanding the foregoing facts in the case, appellants advance the somewhat novel argument that ''said certificates were not sold by the corporation, but on the contrary it delivered the same to MacAdams in compliance with its working agreement with him . . . ; under this agreement it had agreed to execute and deliver to MacAdams assignments of percents in the well as the work under the contract progressed. . . . It needs no legal authority to sustain the proposition that the title to these assignments became and was vested in MacAdams upon their delivery to Parkinson for him. In short, at the time of the sale to the plaintiffs, MacAdams was the owner of the certificates.'' Aside from an evasion of the consequences

of admitted failure to obtain a permit from the commissioner of corporations, we are not advised as to the theory upon which appellants might escape responsibility for a sale of interests which they did not own. Whether the consideration was obtained through a violation of law or by misrepresentation to O'Connell as to ownership, respondents alleged both grounds for recovery of their money, and a judgment based upon either must be upheld if supported by substantial evidence. ■ The trial court found that said defendant McCaslin represented and agreed that all moneys paid for said interests would be held by the company in trust for the sole purpose of drilling a well, and that in the event of a failure to drill, said sum of $4,000 would be returned to respondents upon demand. The evidence herein recited was sufficient to warrant such findings, and the falure to drill or to refund the consideration is admitted.

■ Upon the same premise it is insisted that the transaction did not constitute a sale of an interest in securities within the purview of the Corporate Securities Act. (Stats. 1925, p. 962, sec. 2, subds. 7b, 9.) The act provides.

"Any instrument offered to the public by a 'company' evidencing or representing a right to participate or share in oil, gas or other hydrocarbon substances or other minerals of any sort, as yet undeveloped or in the proceeds of sale thereof," is the legal definition of a "security".

"A 'sale' within the meaning of this act, includes every contract by which, for a pecuniary consideration, called a price, one transfers to another an interest in property. . . ."

It is argued that the working agreement between MacAdams and the corporation under which said certificates were delivered to MacAdams and the latter became the owner thereof, was a contract for labor, and was not a sale. It is not apparent from the record why MacAdams did not retain the interests if in fact he had had them, but the evidence and findings that McCaslin and the corporation sold them to O'Connell and insisted that he make his check to the company, refutes the asserted sale by MacAdams to O'Connell. That the interest held by the corporation was "property" is settled law. (*Terry* v. *Humphreys*, 27 N. M. 564 [203 Pac. 539]; *Graciosa Oil Co.* v. *Santa Barbara*

*Co.*, 155 Cal. 140 [20 L. R. A. (N. S.) 211, 99 Pac. 483]; *Parker* v. *Riley*, 250 U. S. 66 [63 L. Ed. 847, 39 Sup. Ct. Rep. 405].) And the interest evidenced by the instrument sold by the company to O'Connell conveying the right to participate and share in undeveloped "oil, gas or other hydrocarbon substances produced, saved and sold" from any part of the realty under leasehold to said company, was no more nor less than a security within the specific definition of our statutes.

Appellants assign as contradictory and irreconcilable findings of fact that the plaintiffs presented to the defendant company a check for $4,000, that they paid to the defendant company cash, lawful money of the United States, and that the moneys were had and received by the defendants from the plaintiffs. It appears that by means of a check respondent converted $4,000 of the cash in his account at the bank into securities which proved to be of no value. The argument that a check is not cash is therefore inapplicable to the facts of the instant case. The corporation and its officers received the check and indorsed it. Its indorsement by MacAdams was not an incident of the transaction, nor was it known to O'Connell or material to the agreement of the parties.

Error is assigned to the rendition of judgment against all of the defendants, but the argument and citation of authorities holding that where there are two or more joint tort-feasors and the tort is waived, or that in an action for specific personal property, a different result is attained, are here untenable. The present action is based upon separate causes of action arising from the sale of interests without a permit from the commissioner of corporations, and for money had and received. Money paid by a purchaser for an interest under such void sale may be recovered in an action in *assumpsit,* as for money had and received. (*Smith* v. *Bach,* 183 Cal. 259 [191 Pac. 14]; *Barrett* v. *Gore,* 88 Cal. App. 372 [263 Pac. 564].) And the corporation may be liable, although it neither authorized nor ratified the fraud. (*Chamberlain* v. *Southern California Edison Co.,* 167 Cal. 500 [140 Pac. 25]; *Boss* v. *Silent Drama Syndicate,* 82 Cal. App. 109 [255 Pac. 225].) As to officers of a corporation, it has been held generally that they do not incur liability simply by reason of their official char-

acter. But that if they commit a tort they are liable therefor; and it matters not what liability may attach to the corporation for the tort. It is said that this principle exists both in England and in this country as one founded upon the soundest legal analogies and the wisest public policy. (*Mayer* v. *Thompson-Hutchinson Bldg. Co.*, 104 Ala. 611 [53 Am. St. Rep. 88, 28 L. R. A. 433, 16 South. 620] ; *Goodspeed* v. *E. Haddam Bank*, 22 Conn. 530 [58 Am. Dec. 439] ; *Donovan* v. *Purtell*, 216 Ill. 629 [1 L. R. A. (N. S.) 176, 75 N. E. 334] ; *Ward* v. *Pullman Car Corp.*, 131 Ky. 142 [25 L. R. A. (N. S.) 343, 114 S. W. 754] ; *Wines* v. *Crosby Co.*, 169 Mich. 210 [Ann. Cas. 1913D, 1055, 39 L. R. A. (N. S.) 901, 135 N. W. 96] ; *Cameron* v. *Kenyon-Connell Com. Co.*, 22 Mont. 312 [74 Am. St. Rep. 602, 44 L. R. A. 508, 56 Pac. 358] ; *Solomon* v. *Bates*, 118 N. C. 311 [54 Am. St. Rep. 725, 24 S. E. 478] ; *Nunnelly* v. *Southern Iron Co.*, 94 Tenn. 397 [28 L. R. A. 421, 29 S. W. 361] ; *Smith* v. *Utley*, 92 Wis. 133 [35 L. R. A. 620, 65 N. W. 744] ; *Karns* v. *Allen*, 135 Wis. 48 [15 Ann. Cas. 543, 115 N. W. 357] ; *Hoffman* v. *Toft*, 70 Or. 488 [52 L. R. A. (N. S.) 944, 142 Pac. 365].) "To permit an agent of a corporation, in carrying on its business, to inflict wrong and injuries upon others, and then shield himself from liability behind his vicarious character, would often sanction and encourage the perpetration of flagrant and wanton injuries by agents of insolvent and irresponsible corporations. It would serve to stimulate the zeal of responsible and solvent agents of irresponsible and insolvent corporations in their efforts to repair the shattered fortunes of their failing principals upon the ruins of the rights of others." (*Nunnelly* v. *Southern Iron Co., supra.*) The authorities are uniform in holding nonparticipants immune from liability, but the directors herein named who were respectively president and secretary of the appellant corporation are shown to have actively participated in the issuance of securities which were void from their inception. They bound their corporation to refund in the event of a contingency, which transpired, the amount of respondents' outlay, by acts which they were individually bound to know were prohibited; and in the name of and for said corporation they obtained a valuable consideration for void evidences of a purported

investment through which they hoped to profit at respondents' expense.

■ It is contended that the trial court erred in sustaining objections to questions propounded by appellants as to conversations and occurrences tending to show that the money was paid to MacAdams for the purpose of drilling. It appears, however, that he was not present at the time of the purchase and payment by respondent to McCaslin, and that no drilling was done. Hence it is self-evident that the funds were not applied under the contract for the purposes contemplated by such purpose, and that the offered evidence was immaterial.

The judgment is affirmed.

Works, P. J., and Thompson (Ira F.), J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on March 28, 1932, and an application by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on April 25, 1932.