[L. A. No. 11929. In Bank.—March 30, 1933.]

JOSEPHINE MANNION, Appellant, v. SIMEON BALDWIN et al., Respondents.

Fred N. Arnoldy for Appellant.

John Perry Wood, Hugh Carter and Walter A. Ham for Respondents.

Harrison S. Robinson, Harry L. Price and R. W. McDonald, as *Amici Curiae*.

THE COURT.—A hearing was granted in this case in order to consider more fully the issues therein involved. Upon such consideration, we are satisfied that the opinion of. Mr. Justice *pro tem*. Tuttle correctly decides said issues, and we therefore adopt said opinion as the opinion of this court. It reads as follows:

"This is an action brought to recover the sum of $7,500 which it is contended was paid for stock issued and sold in violation of a permit granted under the Corporate Securities Act. The trial court found to the contrary, and judgment was entered in favor of defendants. The appeal is taken from the judgment.

"The sole question before this court is the sufficiency of the evidence to support the findings.

"In May, 1927, respondent Sherman M. Sykes and respondent Simeon Baldwin entered into a partnership to conduct a retail clothing business. Baldwin furnished some $800. Sykes advanced no money whatever. Each owned a half interest in the business. From time to time Baldwin advanced more money for the business, until there was owing him some $10,000. Eventually he became dissatisfied with the manner in which the business was being conducted, and agreed to sell his interest in the partnership to Sykes for the sum of $10,000 and to accept in payment thereof two

promissory notes for $5,000 each. In the meantime a corporation known as The Trousseau Shop, Inc., was formed by Baldwin and his wife, Helen D. Baldwin, and Gladys Sykes, the wife of Sherman Sykes, for the purpose of taking over the partnership business, and on October 24, 1927, the commissioner of corporations granted a permit authorizing the corporation to sell 200 shares of its capital stock at par ($100) for cash. On December 1, 1927, Sykes, his wife, and his mother executed and delivered to Baldwin the two promissory notes above mentioned for $5,000 each in payment of his share in the partnership; and on the same day the directors of the corporation authorized Baldwin as president and Mrs. Sykes as secretary to issue five certificates calling for a total of 160 shares of stock. Certificates numbered 1, 2, and 3 were issued for one share, each, as qualifying shares to the incorporators; and certificates numbered 4 and 5 were issued to Gladys Sykes for 75 and 82 shares, respectively. Certificate number 5 was thereupon delivered to Baldwin as security for the payment of said promissory notes; and certificate number 4 was reissued as certificate number 6, for the same number of shares, 75, with the name of the holder thereof left blank. Baldwin and his wife and Mrs. Sykes as directors of the corporation thereupon adopted a resolution authorizing the purchase from themselves and Sherman Sykes of the partnership business, subject to its obligations, for $16,000 cash; and Baldwin, his wife, Sykes, and his wife then joined in an instrument transferring to the corporation the partnership assets subject to its obligations.

"On the next day, December 2, Baldwin and Mrs. Sykes met at the bank and Baldwin delivered his certified check for $16,000, payable to the defendant corporation. This check was then and there deposited to the account of the corporation and immediately withdrawn therefrom and paid back to Baldwin in the form of a cashier's check for a like amount.

"On December 5, 1927, defendant Gladys Sykes met plaintiff at the bank. Mrs. Sykes signed certificate number 6 as secretary (it had already been signed by Baldwin as president of the corporation) and delivered the same to plaintiff and received from plaintiff a check for $7,500, which was deposited to the account of the corporation. The

sum of $5,000 was thereupon withdrawn from said account and paid over to Baldwin in payment of one of his notes. The balance, $2,500, remained in the bank account of the corporation.

"It appears that plaintiff had a nephew for whom she was desirous of securing a position, and the understanding was that he would be given work if she made the investment. In any event, as soon as she paid for the stock the nephew started to work for defendant corporation. Within about a year's time, after the trial of this cause, defendant corporation was adjudicated a bankrupt.

"It is the rule in this state that permits issued by the corporation commissioner for the sale of stock must be strictly complied with. (*Parrish* v. *American Ry. Emp. Pub. Corp.*, 83 Cal. App. 298 [256 Pac. 590].) No 'thinly veiled attempt to circumvent the manifest purpose of this salutary legislation (Blue Sky Law) should go unwhipped of justice'. (*People* v. *McCalla*, 63 Cal. App. 783 [220 Pac. 436, 439].) Speaking of the Corporate Securities Act, and evasions of the provisions thereof, our courts have said: 'If such subterfuges were permitted, the statute would soon become a dead letter and the object it was designed to accomplish would be frustrated by the very persons against whose practices it is directed.' (*Domenigoni* v. *Imperial Live Stock etc. Co.*, 189 Cal. 467, 474 [209 Pac. 36, 39].)

"As we have stated, on December 1st all the 160 shares (except qualifying shares to incorporators) were issued to Mrs. Sykes, and the transfer of the partnership assets to the corporation was made. No cash whatever was paid for the stock. This constituted a direct violation of the permit to sell for cash. It is true that on the following day Baldwin handed Mrs. Sykes a check for $16,000, but this was immediately returned to Baldwin. Here is what he had to say about it: 'Q. . . . When you gave this $16,000 check of yours, payable to the Trousseau Shop, Inc., it was your intention and the understanding, that you would receive right back— A. You bet your life it was. . . . Q. You were not letting go of this money? A. I should say not; no sir.'

"There is evidence upon the part of defendants that this $16,000 was loaned to Mrs. Sykes so that she could pay for the stock. No note or any other evidence of the indebtedness was produced.

"It is a significant fact that just as soon as this $7,500 was received from plaintiff, defendant Baldwin was on the spot to take $5,000 thereof in payment of one of his notes against Mrs. Sykes. Defendants contend that this stock (sold to plaintiff) was the personal property of Mrs. Sykes, and that she therefore did not need a permit to sell the same. Why was the whole amount deposited in the account of the corporation, and the sum of $2,500 allowed to remain there?

"The only reasonable conclusion and inference which can be drawn from the facts in this case is that the stock issued on December 1st was in violation of the terms of the permit, the consideration being not cash, but the partnership business.

"It is earnestly contended by respondents that there is substantial evidence to support the finding that the stock in question was the personal property of Mrs. Sykes, hence her sale to plaintiff did not come within the purview of the Corporate Securities Act. (*People* v. *Pace,* 73 Cal. App. 548 [238 Pac. 1089].) The answer is that Mrs. Sykes was a director of the company and present when the unauthorized issue of the stock was made. It does not lie in her mouth to now say that her sale was a private one. She knew that the stock was void, and sold it to an innocent party with this knowledge, and must be held liable for any loss which resulted. Defendants Baldwin and his wife and Gladys Sykes were all directors who were present at the meeting which voted to issue the stock in violation of the permit. They are active participants, and equally liable. (*O'Connell et ux.* v. *Union Drilling & Petroleum Co. et al.,* 121 Cal. App. 302 [8 Pac. (2d) 867].) It is true that they did not actually participate in the sale to plaintiff, but the uncontradicted evidence shows that at the meeting of December 1st, when the stock was issued, the directors knew that it was going to Mrs. Mannion. We must assume that the corporation received value in an amount equal to the par value of the stock which it sold to Mrs. Sykes, who had knowledge of the fact that it was issued in violation of the permit. Under such conditions the corporation should share the liability for reimbursement. It does not appear that defendant Sherman M. Sykes was in any manner connected with the issuing of the stock, and he therefore cannot be compelled to reimburse plaintiff.

"Manifestly the transaction which took place on December 2d was a sham and was designed and carried out to circumvent the conditions of the permit and thereby make it possible to solicit and obtain from Mrs. Mannion the cash with which to pay Baldwin part of the money he had advanced to the partnership.

█ "We are aware of the rule that where the evidence is conflicting on issues of fact, the finding of the trial court will not be disturbed. There is no pretense, however, that any cash was paid for the stock when it was issued to Mrs. Sykes on December 1st, and consequently the trial court's decision sustaining the legality of the transaction obviously violates the rule enunciated in the cases we have cited, which, as shown, require strict compliance with the terms of the permit.

"It is not disputed that stock issued contrary to the terms of a permit granted by the commissioner of corporations is illegal and void, and that the purchaser is entitled to recover the money paid therefor. (*Tatterson* v. *Kehrlein*, 88 Cal. App. 34 [263 Pac. 285], and cases cited therein.)

"There is no evidence to show that plaintiff knew that she was buying stock which had been sold in violation of the permit. This contention of respondents is without merit.

"Summing up the entire matter, the evidence shows, without substantial conflict, that the stock issued on December 1st was not sold for cash, but that the consideration therefor was the transfer of the assets of the partnership, and hence in contravention of the terms of the permit; that all defendants except Sherman M. Sykes participated in such issue and knew at the time that the 75 shares were to be sold to plaintiff; that the sum of $7,500 paid by plaintiff for such stock was deposited in the bank account of the corporation."

The judgment is reversed.