[Civ. No. 11044. First Appellate District, Division One.—March 29, 1940.]

HARRY AUSLEN, Respondent, v. MARY E. THOMPSON, as Executrix, etc., Appellant.

Frank M. Carr for Appellant.

Leonard S. Lurie and Myron Harris for Respondent.

KNIGHT, J.—This is an action to recover certain sums of money paid as the purchase price for corporate stock. The cause was tried before the court sitting without a jury, and judgment was entered in plaintiff's favor for $14,150 and interest. The stock was issued by Oxford Consolidated Mines Co., a Nevada corporation, and sold in California to plaintiff and other persons who subsequently assigned their claims to plaintiff; and the ground upon which recovery is sought is that the sales were made in violation of the California Corporate Securities Act in that no permit was ever applied for or obtained from the corporation commissioner authorizing said sales. The parties defendant against whom the judgment was rendered were J. A. Pizzotti as trustee, the Oxford Consolidated Mines Co., four surviving members of the board of directors thereof, namely, J. A. Pizzotti, Anson S. Bilger, E. J. Thomas, and Charles H. Wilson, and Mary E. Thompson, as executrix of the last will of her deceased husband, Clyde Lamb Thompson, who for a short period of time was a member of said board of directors. The executrix alone has appealed, and the appeal is taken on the judgment roll.

The second amended complaint contained 38 counts. The first 19 were for the recovery of damages, and the remaining 19 were for money had and received. Each group involved 19 sales transactions. Appellant, appearing separately, filed a demurrer to the complaint on numerous grounds, and it was

overruled as to the first group and sustained as to the second group; whereupon appellant filed an answer denying generally and specifically the allegations of counts one to nineteen, inclusive, and as a special defense to the sixth to nineteenth causes of action inclusive, set up that plaintiff with full knowledge that no permit had been obtained from the corporation commissioner to sell the stock, and as an agent of said corporation, sold said shares of stock to the said purchasers therein named and thereafter had the said shares of stock so sold and issued assigned to himself. As a further defense and by way of estoppel she alleged that prior to the time appellant was named as a defendant, plaintiff told her that in order to protect her interest and that of the estate it would be necessary for her to pay plaintiff $100; that relying on these representations, which were known by plaintiff to be false, fraudulent and untrue, appellant paid plaintiff $100; and that thereafter plaintiff amended his complaint and joined appellant as one of the defendants. A demurrer was interposed to each special defense, and was overruled as to the first, and sustained as to the second, with leave to amend; whereupon appellant amended her second defense and set up a cross-complaint for money had and received for the recovery of the sum of $100. The court's findings were general in character, that is to say, it found merely that all the allegations of the complaint were true, and that none of the allegations of the answers or of the special defense or of the cross-complaint were true; and judgment was entered accordingly. The determinative question presented by the appeal is, therefore, whether the allegations of the first 19 counts of the complaint are legally sufficient to state causes of action against appellant.

The first five thereof are identical except as to dates, amounts and names. It is alleged therein, in effect, that the Oxford Consolidated Mines Co. was organized under the laws of Nevada by defendants Pizzotti and Bilger in July, 1934, for the purpose of having conveyed to it certain mining property situate in Sierra County, California, and for the purpose of doing business within the State of California and of locating and establishing its principal place of business in Alameda County; that immediately following its incorporation there was conveyed to said corporation said mining property;

that thereupon it located and established its principal place of business in Alameda County, and except for the initial organization meeting, has transacted all its business therein. It is then alleged that said company was incorporated in Nevada for the purpose of circumventing, evading and avoiding the California Corporate Securities Act in the sale of said stock to the public in California; that it was the intention to issue the stock in Nevada and thereafter sell it to the public in California through the defendant J. A. Pizzotti, acting as trustee for the benefit of and as agent for and on behalf of the corporation, without securing the permission of the corporation commissioner of California for the issuance or sale thereof in California; also that at its first organization meeting in Nevada the board of directors (Pizzotti and Bilger) issued all the capital stock, 250,000 shares, to Pizzotti, upon the express understanding and agreement that as trustee for the benefit of and agent of the corporation he would sell said stock to the public in California and would construct and develop the mining property of the corporation with the proceeds; that the purpose of the issuance and delivery of the stock to him, as such trustee and agent, was to evade the California Corporate Securities Act. Continuing, the complaint alleges that subsequent to the transactions which took place in Nevada, but prior to the sale of any shares of stock to plaintiff or his assignors, the individual defendants above named, including the said Clyde Lamb Thompson, were at a meeting in Oakland elected directors; that said directors knew prior to the sales of stock that the corporation had been incorporated in Nevada, and the stock issued to Pizzotti as trustee for the benefit of and agent of the corporation to evade the California Corporate Securities Act, and that Pizzotti intended to sell said stock in California without a permit from the corporation commissioner; that thereafter, with the express knowledge, permission and consent of the directors, and their express knowledge that no permit had been applied for, Pizzotti, acting as trustee and agent for the corporation, sold to plaintiff and his assignors certain shares of stock for certain sums, and upon payment therefor there was issued to said purchasers shares of stock in said corporation; that said stock was worthless and void; that no permit had been obtained for the issuance or sale of said stock in California, and

that the corporation and the directors individually and as directors knew that the provisions of the California Corporate Securities Act, requiring such a corporation to file with the corporation commissioner a certificate of its authority to transact business in the state where it was incorporated and to appoint the California corporation commissioner its attorney, had not been complied with, and that the sale of said shares in California was not authorized or permitted by the California corporation commissioner; that the purchasers of said stock relied implicitly upon the genuineness of the issue, delivery and sale of said stock and believed that the defendants had complied with the requirements of the California Corporate Securities Act and had obtained a permit for the issuance and sale of said stock; that the money so paid for the stock was with the defendants' consent, approval and knowledge expended in the development of said mining property and the purchase of equipment therefor, and operating the plants for or pertaining to the aforesaid mining property, and that the corporation and its directors had accepted and retained the use and benefits of said money so paid out and expended. The assignment of the assignors' claims to plaintiff is then alleged; also the death of Thompson, the appointment of appellant as executrix of his estate, the presentation of a verified claim to the estate, and its rejection. And finally it is alleged that the sale and purchase of the shares of stock were illegal and void and no rights were acquired by the purchasers; that no consideration was received by them, and the money paid out lost, and that the plaintiff has been damaged in the sum paid for the stock.

The sixth to nineteenth counts (inclusive) repeat the above allegations, and allege also that at a meeting in Oakland in December, 1935, the board of directors of said corporation, all being present and participating therein, authorized an increase in the common capital stock of said corporation from 250,000 to 300,000 shares, and further authorized the issuance and delivery in California of the additional 50,000 shares to Pizzotti, as trustee for the benefit of and agent for the corporation, under the same understanding and agreement as in the original issuance of the stock to him in Nevada, and that Pizzotti with the express knowledge, permission and consent of the board of directors and their express knowledge that no

permit had been obtained, sold said stock to the purchasers named in the various counts.

The Corporate Securities Act (Deering's General Laws of 1937, p. 1768) contains these provisions: (sec. 3) "No company shall sell any security, except upon a sale for delinquent assessment against such security made in accordance with the laws of this state, or offer for sale, negotiate for the sale of, or take subscriptions for any security of its own issue until it shall have first applied for and secured from the commissioner a permit authorizing it so to do"; (sec. 16) "Every security issued by any company without a permit of the commissioner authorizing the same then in effect, shall be void . . . " We are of the opinion that the facts found herein by the court to be true are legally sufficient to sustain plaintiff's contention that the transactions relating to the issuance and sale of the stock contravened the foregoing provisions of said act and constituted actionable fraud. (*Gillis* v. *Pan American Western Pet. Co.*, 3 Cal. (2d) 249 [44 Pac. (2d) 311]; *Pollak* v. *Staunton*, 210 Cal. 656 [293 Pac. 26]; *People* v. *Eiseman*, 78 Cal. App. 223 [248 Pac. 716].)

It is appellant's theory that the issuance of the stock to Pizzotti and the subsequent sale thereof by him falls within the exception declared by section 2, subdivision c, 3, of said act, which provides that the requirements as to obtaining permits to sell securities shall not apply to the "sale of securities when made by or on behalf of a vendor not the issuer or underwriter thereof who, being a *bona fide* owner of such securities, disposes of his own property for his own account, and such sale is not made, directly or indirectly, for the benefit of the issuer or an underwriter of such security, or for the direct or indirect promotion of any scheme or enterprise with the intent of violating or evading any provision of this act." (*People* v. *Pace*, 73 Cal. App. 548 [238 Pac. 1089]; *People* v. *Craven*, 219 Cal. 522 [27 Pac. (2d) 906].) And in support of such theory appellant makes the following statement in her opening brief: "The facts were that Pizzotti and his associates (but not Dr. Thompson) owned an interest in mining property located in Sierra County, California. They incorporated in Nevada and took the capital stock in exchange for their interest in the property, the stock being issued to Pizzotti as trustee for himself and associate owners, and

they brought that stock, so issued in Nevada and privately owned, to the state of California, where plaintiff and his assignors bought some of it from Pizzotti." But, the appeal having been taken on the judgment roll, the evidence is not before us; and the findings clearly negative appellant's theory, for nowhere in the allegations of the complaint or in the findings does it appear that Pizzotti was the owner of the property which was turned over to the corporation or that the stock was issued to him in exchange for said property. Quite to the contrary, the allegations and the findings are to the effect that the stock was issued to him "as trustee for the benefit of and as agent for and on behalf of said corporation"; that it was sold by him in California, and that this was done with intent to evade the provisions of the Corporate Securities Act.

Appellant makes the further point that in any event "The Nevada corporation, in Nevada, acting under the laws of Nevada, might lawfully issue its shares of capital stock to Pizzotti, and after their issuance might deliver them to Pizzotti as trustee to 'sell shares of stock so issued and delivered to the public at large in California and to develop the mining property' ", and that any statute of this state which would have the effect of interfering with the exercise of such rights would be in violation of the doctrine of comity and of federal control of interstate commerce. We are unable to sustain this view. The controlling doctrine in this regard is stated in Corpus Juris as follows: "A corporation created by one state or by a foreign government can exercise none of the functions or privileges conferred by its charter in any other state or country, except by the comity and consent of the latter. Subject to constitutional limitations, a state has the right to entirely prohibit foreign corporations from doing business within the state. Having the right to prohibit foreign corporations from doing business in a state at all, it is within the power of the state to prohibit the transaction of business by the foreign corporation within the state except upon compliance with such terms or conditions and subject to such restrictions as the state may in its discretion see fit to impose, unless such prohibition or restriction imposed is so conditioned as to violate some provision of the federal constitution." (Vol. 14a, p. 1244.) And again, in volume 12, page

82, it is stated thus: "State statutes, commonly known as 'Blue Sky Laws,' which prohibit the sale of stocks, bonds, notes, mortgages, and other securities, not only by corporations, but by all persons, partnerships, or aggregations of individuals, whether residents or non-residents of the state, except on compliance with certain prescribed terms and conditions, are police regulations which affect interstate commerce only incidentally, and, in the absence of action by congress, are not invalid as contravening the commerce clause of the federal constitution." Substantially the same doctrine is declared in *Gillis* v. *Pan American Western Pet. Co.*, *supra*, wherein several decisions from the Supreme Court of the United States are cited.

As pointed out by appellant, the court found that director Thompson was not a member of the board of directors at the time the transactions took place in Nevada relating to the issuance to Pizzotti as trustee of the 250,000 shares of stock, and there is no finding that he himself ever made any sales of stock. It is contended, therefore, that the facts found fail to establish any liability on his part for any of the transactions involving the sales made by Pizzotti. The court did find, however, that the deceased became a director prior to the making of any sales, and that he was acting as such when the sales were made to plaintiff and his assignors; furthermore, the court found that prior to such sales all directors knew the purposes for which the incorporation had taken place in Nevada, that the stock had been issued to Pizzotti as trustee and agent for the corporation, and that it was the intention to sell the same in California without a permit; also that the sales by Pizzotti were made "with the express knowledge, permission, aid and consent" of the directors; and they knew that no permit had been obtained, and that the sales were unauthorized by the corporation commissioner, and were about to be made without complying with the provisions of the Corporate Securities Act. Continuing, the court found that all directors participated in the meeting of the board in California at which, with intent to evade the Corporate Securities Act, the board authorized additional shares of stock to be issued to and sold by Pizzotti in California under the same arrangement, and that such stock was so sold to purchasers in this state with the permission, knowledge and con-

sent of the members of said board. It would seem, therefore, that the facts thus found are sufficient under the rule of the cases hereinafter cited to charge each member of the board of directors with liability for said sales. (*Randall* v. *California L. B. Syndicate,* 217 Cal. 594 [20 Pac. (2d) 331]; *Mannion* v. *Baldwin,* 217 Cal. 600 [20 Pac. (2d) 678]; *Boss* v. *Silent Drama Syndicate,* 82 Cal. App. 109 [255 Pac. 225]; *O'Connell* v. *Union Drilling etc. Co.,* 121 Cal. App. 302 [8 Pac. (2d) 867]; *Holmquist* v. *Kent,* 219 Cal. 231 [25 Pac. (2d) 977].)

■ Appellant points out also that according to the findings director Thompson received no part of the purchase price paid for any of said stock; that all of it was "used, paid out and expended in the development and improvement of and in acquiring equipment and operating plants for or pertaining to" the mining property belonging to the corporation; and in this connection it is held to be the law that in actions to recover the purchase price paid for stock sold without a permit, based on counts for money had and received, a defendant's liability is limited to the amounts actually received by him from said sales. (*Pollak* v. *Staunton, supra.*) However, such is not the rule where, as here, recovery of the amount of the purchase price is sought by way of an action for damages. (*Randall* v. *California L. B. Syndicate, supra; Holmquist* v. *Kent, supra.*) And it is held also that in seeking recovery of the purchase price paid, a buyer is not restricted to the remedy by way of rescission, but may, as here, bring an action for the damages suffered. (*Castle* v. *Acme Ice Cream Co.,* 101 Cal. App. 94 [281 Pac. 396].)

■ Appellant further contends that the causes of action sued upon are in their nature either actions to enforce a statutory penalty or to recover upon a liability based on tort, and that in either case the causes of action as to director Thompson abated upon his death, and were unassignable. While it is true that an action to enforce a statutory penalty does not survive death and is not assignable, it has been held in several cases that where, as here, the remedy is measured by actual loss, the remedy is not to enforce a penalty. (*Moss* v. *Smith,* 171 Cal. 777 [155 Pac. 90]; *Winchester* v. *Howard,* 136 Cal. 432 [64 Pac. 692, 69 Pac. 77, 89 Am. St. Rep. 153]; *Agudo* v. *County of Monterey,* 13 Cal. (2d) 285 [89 Pac. (2d) 400].)

▮

▮ And with respect to actions sounding in tort, it is well settled that although in the absence of statute torts founded on wrongs of a purely personal nature do not survive death and are not assignable, such is not the rule as to torts affecting property. (*Wikstrom* v. *Yolo Fliers Club*, 206 Cal. 461 [274 Pac. 959] ; *Jackson* v. *Deauville Holding Co.*, 219 Cal. 498 [27 Pac. (2d) 643] ; *Evans* v. *Gibson*, 220 Cal. 476 [31 Pac. (2d) 389].) ▮ Nor in view of the negative finding upon the matters pleaded by appellant in her first special defense and the affirmative findings upon the allegations of paragraph IX of the complaint to the effect that the buyers of said stock relied implicitly upon the genuineness of the issue and believed that the sales were made under authority granted by the corporation commissioner, is there any legal ground for the application of the rule of *pari delicto*.

Counsel for appellant in his closing brief has set forth at some length a statement of evidentiary matters relating to the incorporation of the company, the purpose of its incorporation, the value of its properties, and the circumstances attending the purchase of stock by plaintiff and his assignors ; also the manner in which the decedent was persuaded to fill a vacancy on the board of directors during the period of time the stock sales transactions were being carried on, and the financial ruin that will ensue to appellant if the judgment as to her is upheld. ▮ As already stated, however, the appeal was taken on the judgment roll alone, and that being so, the evidentiary matters narrated in counsel's statement do not constitute proper subject-matter for consideration in the determination of the appeal. The other points raised by appellant are merely incidental to those already determined, and being without merit do not require discussion.

The judgment is affirmed.

Peters, P. J., and Ward, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on April 27, 1940, and an application by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on May 27, 1940.