Filed 4/27/26  Lemus v. Owens-Brockway Glass Container CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| LUCIO LEMUS, JR.,<br><br>      Plaintiff and Appellant,<br><br>      v.<br><br>OWENS-BROCKWAY GLASS CONTAINER, INC.,<br><br>      Defendant and Respondent. | B341878<br><br>(Los Angeles County Super. Ct. No. 20STCV44110) |

APPEAL from a judgment of the Superior Court of Los Angeles County, William F. Highberger, Judge.  Affirmed.

Matern Law Group, Matthew J. Matern, Mikael H. Stahle, Debra J. Tauger; Altshuler Berzon and Michael Rubin for Plaintiff and Appellant.

Seyfarth Shaw, Candace Bertoldi, Elizabeth MacGregor, Robin E. Devaux and Brian P. Long for Defendant and Respondent.

_____

Lucio Lemus, Jr. (Lemus) appeals summary judgment in favor of respondent Owens-Brockway Glass Container, Inc. (Owens). Lemus is pursuing alleged labor law violations as successor in interest to his father, Lucio Lemus, Sr. (Decedent). Decedent worked for Owens from 2008 to 2021.

On de novo review, we conclude that Lemus has no standing to maintain a claim under the Private Attorneys General Act (PAGA). (Lab. Code, § 2698 et seq.)[1] His claims for failure to provide breaks, overtime pay, or correct wage statements lack any supporting evidence. The unfair competition law (UCL) claim fails because no law was violated. We affirm.

## FACTS AND PROCEDURAL HISTORY

In 2020, Decedent sued Owens, where he worked as a welder/fabricator. He alleged that Owens failed to provide meal or rest periods, pay overtime, minimum wage, or wages due at the end of employment; failed to maintain records, furnish accurate wage statements, or pay employee expenses; and violated the UCL. He sought PAGA penalties.

Owens removed the case to federal court. In 2022, Lemus substituted into the case as Decedent's successor in interest.[2] Lemus never worked for Owens; he did not file a PAGA letter with the Labor Workforce Development Agency (LWDA), though Decedent submitted one in 2020.

---

[1] Undesignated statutory references are to the Labor Code. We are using the version of PAGA in effect from June 27, 2016, until June 30, 2024. (Stats. 2016, ch. 31, § 189.)

[2] The federal district court remanded the case for lack of subject matter jurisdiction in 2023. Its orders do not address the issues presented here: It merely found Lemus is a proper party as Decedent's heir.

2

Owens moved for summary judgment. It argued that the terms of Decedent's employment were set forth in a collective bargaining agreement (CBA). Human resources manager Sidney Gleason declared that Decedent was provided paid breaks and did not complain to Owens or his union that the terms of his employment were violated. Pay records showed Decedent routinely received overtime pay. He was employed, but performed no work, from June 25, 2020, until his death on October 2, 2021.

Owens argued that Lemus could not maintain a PAGA claim as he was not an "aggrieved employee." Owens complied with all labor laws; Decedent's claims did not transfer to Lemus; and there is no evidence of labor violations. Decedent was in a union, covered by a CBA, and never complained of violations. The UCL cause of action fails because it is contingent on the unavailing Labor Code claims.

In opposition, Lemus argued that Decedent's claims survive, and he has standing to pursue them. Owens did not carry its burden of proving compliance with meal, rest, pay, and wage statement, waiting time, and record requirements. The PAGA claim is viable and not subject to summary judgment. In support of his opposition, counsel offered "randomly selected" time records he claimed did not align with Decedent's wage statements.

Owens replied that Lemus failed to raise a triable issue of material fact. Decedent's claims could not be assigned, and unassignable claims do not survive death. Lemus submitted no admissible evidence that Decedent was deprived of his rights under the Labor Code. Owens objected that counsel's declaration

3

about Decedent's wage and time records lacked personal knowledge and the records are unauthenticated.

**The Trial Court's Ruling**

The court granted Owens's motion. It noted that Decedent was not deposed to preserve his testimony. Without testimony, the evidence Lemus offered "is no better than speculation." The court sustained Owens's objections to Lemus's attempted use of time records and wage statements.

The court ruled that Decedent's PAGA claim did not transfer upon death to Lemus. Claims for unpaid overtime and meal periods are covered by the CBA. Lemus failed to refute Owens's showing that it complied with the CBA. Without Decedent's testimony, there was no competent evidence showing he was denied meal breaks.

The court entered judgment for Owens and dismissed Lemus's claims with prejudice. He appeals the judgment.

**DISCUSSION**

**1. Appeal and Standard of Review**

The judgment is appealable. (Code Civ. Proc., §§ 437c, subd. (m)(1), 904.1., subd. (a)(1).) Summary judgment must be granted if no triable issue of material fact exists and the moving party is entitled to judgment as a matter of law. (*Id.*, § 437c, subd. (c).) The procedure enables courts to cut through the pleadings and determine if trial is necessary. (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 843.) The motion succeeds if "the plaintiff cannot establish at least one element of the cause of action [because] the plaintiff does not possess, and cannot reasonably obtain, needed evidence." (*Id.* at 854.)

We independently examine the record to determine if triable issues exist. (*Johnson v. American Standard, Inc.* (2008)

4

43 Cal.4th 56, 64.) Evidence presented in opposition to summary judgment is liberally construed. (*Regents of University of California v. Superior Court* (2018) 4 Cal.5th 607, 618.)

**2. Lemus Cannot Pursue Decedent's PAGA Claim**

The parties dispute Lemus's standing to pursue a PAGA claim. His standing presents an issue of law on undisputed facts. (*A.J. Fistes Corp. v. GDL Best Contractors, Inc.* (2019) 38 Cal.App.5th 677, 687.) PAGA requires "an 'aggrieved employee' who can represent the state as a PAGA plaintiff and sue 'on behalf of himself or herself and other current or former employees.' " (*Hutcheson v. Superior Court* (2022) 74 Cal.App.5th 932, 939; § 2699, former subd. (a).)

PAGA "does not create property rights or any other substantive rights. Nor does it impose any legal obligations. It is simply a procedural statute allowing an aggrieved employee to recover civil penalties—for Labor Code violations—that otherwise would be sought by state labor law enforcement agencies. As we have held in the past, the right to recover a statutory penalty may not be assigned." (*Amalgamated Transit Union, Local 1765, AFL-CIO v. Superior Court* (2009) 46 Cal.4th 993, 1003 (*Amalgamated*).) For example, a labor union lacks standing to pursue a PAGA claim assigned to it because the union was not an " ' "aggrieved employee." ' " (*Id.* at p. 1005.)

"Ordinarily a right that cannot be assigned does not survive the death of the person entitled to it." (*Estate of Blair* (1954) 42 Cal.2d 728, 731.) Further, "an action to enforce a statutory penalty does not survive death and is not assignable." (*Auslen v. Thompson* (1940) 38 Cal.App.2d 204, 213.)

A PAGA claim is for statutory penalties. PAGA "authorizes a representative action only for the purpose of seeking statutory

5

penalties for Labor Code violations [citation], and an action to recover civil penalties 'is fundamentally a law enforcement action designed to protect the public and not to benefit private parties.' " (*Arias v. Superior Court* (2009) 46 Cal.4th 969, 986; *Kim v. Reins International California, Inc.* (2020) 9 Cal.5th 73, 86 (*Kim*) [a PAGA enforcement action does not "redress employees' injuries" and is "between the LWDA and the employer, with the PAGA plaintiff acting on behalf of the government"].)  "The private plaintiff has no claim to these statutory penalties; they are the property of the state."  (*Medina v. Poel* (E.D.Cal. 2015) 523 B.R. 820, 827; § 2699, former subd. (i) [75 percent of the penalties go to the LWDA; the remaining 25 percent is disbursed to employees aggrieved by the labor violation].)

Lemus relies upon survivorship law to assert standing. (See Code Civ. Proc., §§ 377.30 [a cause of action "that survives the death of the person entitled to commence an action or proceeding passes to the decedent's successor in interest"], 377.21 ["[a] pending action or proceeding does not abate by the death of a party if the cause of action survives"].)

Survivorship law does not apply to claims asserted on behalf of the government.  Under PAGA, "[t]he plaintiff is not even the real party in interest in the action—the government is." (*Huff v. Securitas Security Services USA, Inc.* (2018) 23 Cal.App.5th 745, 757.)  "Relief under PAGA is designed primarily to benefit the general public, not the party bringing the action." (*Kim*, *supra*, 9 Cal.5th at p. 81.)  Because a PAGA claim is not a property interest, but a right to pursue a claim on behalf of the state, it is outside the scope of survivorship statutes' protection of a decedent's personal claims.

The transfer of PAGA claims upon death was addressed in *Estate of Harrington v. Marten Transp.* (C.D.Cal. 2017) 2017 U.S.Dist. Lexis 192220, p. *14.) The court held that "a PAGA claim is simply not the kind of claim that survives a plaintiff's death." It cited *Amalgamated, supra,* 46 Cal.4th at page 1003 for the rule that a PAGA claim cannot be assigned and concluded, " 'a right that cannot be assigned does not survive the death of the person entitled to it.' " (*Estate of Harrington*, at p. *14; accord, *Hargrove v. Legacy Healthcare, Inc.* (2022) 80 Cal.App.5th 782, 789 [plaintiff's death "necessitated the dismissal of her PAGA claim" unless a contemporaneously aggrieved employee could substitute in as employee representative].)

Similarly, the court in *Khanna v. Inter-Con Sec. Sys.* (2009 E.D.Cal. 2009) U.S.Dist. Lexis 133645 rejected an argument that a PAGA claim may be pursued by decedent's wife under California survivorship law. "[A]ny PAGA claim Khanna had, expired upon his death and Plaintiff, as Khanna's successor in interest, cannot bring a PAGA claim on his behalf." (*Id.* at p. *12.) The court wrote that the wife "is not an 'aggrieved employee' herself" and therefore lacks standing to assert a claim for PAGA penalties. (*Ibid*.) Here, as in *Khanna,* Lemus is not an "aggrieved employee." Decedent's PAGA claim did not survive his death. Lemus lacks standing to pursue it.

## 3. Individual Claims

Lemus challenges the trial court's rulings on claims for missed meal and rest breaks, failure to pay correct overtime wages, and inadequate wage statements. He is not appealing rulings rejecting his causes of action for minimum wage; waiting time penalties; failure to maintain records; or failure to repay business expenses.

7

### a. Meal Breaks

Employees are entitled to a minimum 30-minute meal break after no more than five hours of work. (§ 512, subd. (a).) An employer satisfies this requirement if it "relinquishes control over [employee] activities and permits them a reasonable opportunity to take an uninterrupted 30-minute break, and does not impede or discourage them from doing so. . . . [¶] . . . [T]he employer is not obligated to police meal breaks and ensure no work thereafter is performed"; no liability attaches so long as the employer has relinquished control. (*Brinker Restaurant Corp. v. Superior Court* (2012) 53 Cal.4th 1004, 1040–1041 (*Brinker*).)

Owens's manager Gleason declared that Decedent was entitled to paid meal and rest breaks. If unable to take a break, he could report missed breaks to his supervisor, human resources, or union representative, and was entitled to a premium payment. Owens has no record of Decedent reporting missed meal breaks.

Article 18 of the CBA, cited by Gleason, addresses lunch and rest periods but does not address clocking out. Though Gleason stated that employees are not required to clock out for meals, her declaration is contradicted by Owens's written policy. It reads, "Employees must clock out when taking a meal break and clock back in when they resume working. If . . . employees are unable to clock in or out, they must report their meal break and all working time to their supervisor."

Owens's written policy is consistent with state regulation requiring that meal periods be recorded. (Cal. Code Regs., tit. 8, § 11010, subd. 7(A)(3) ["Meal periods . . . shall also be recorded" though not if operations cease during lunch].) " '[W]ithout the recording of all in-and-out time, including meal periods, the

8

enforcement staff would be unable to adequately investigate and enforce' a wage order's meal period provisions." (*Brinker, supra,* 53 Cal.4th at p. 1053 (conc. opn. of Werdegar, J.).)

" 'If an employer's records show no meal period for a given shift over five hours, a rebuttable presumption arises that the employee was not relieved of duty and no meal period was provided.' " (*Donohue v. AMN Services, LLC* (2021) 11 Cal.5th 58, 74 (*Donohue*).) On summary judgment, the presumption does not impose " 'automatic liability' " on the employer, who "can rebut the presumption by presenting evidence that employees were compensated for noncompliant meal periods or that they had in fact been provided compliant meal periods during which they chose to work." (*Id.* at p. 77.)

Though Owens failed to record meal breaks, our analysis does not end there. Gleason rebutted the presumption by declaring that Owens provided compliant meal breaks, paid a premium for missed breaks, and Decedent never reported missing one.[3] The sticking point is Lemus's lack of evidence showing Decedent ever missed meals, or that Owens failed to relinquish control over his work for an uninterrupted meal break, or impeded or discouraged him from doing so. (*Brinker, supra,* 53 Cal.4th at p. 1040.)

To establish a prima facie case, an employee "has the burden of proving that he performed work for which he was not

---

[3] The absence of complaints in Decedent's work record is within Gleason's purview as human resources manager. (See *Angelus Chevrolet v. State of California* (1981) 115 Cal.App.3d 995, 1001 [summary judgment declaration was based upon "personal knowledge of facts gleaned in his capacity as personnel officer"].)

properly compensated." (*Anderson v. Mt. Clemens Pottery Co.* (1946) 328 U.S. 680, 687 [66 S.Ct. 1187, 90 L.Ed.2d 1515].) "[A]n employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." (*Id.* at p. 687; *Morales v. Factor Surfaces LLC* (2021) 70 Cal.App.5th 367, 372 [when the employer did not record plaintiff's hours, plaintiff was allowed to submit a chart calculating overtime he was owed, even if imprecise]; *Hernandez v. Mendoza* (1988) 199 Cal.App.3d 721, 727–728 [plaintiff testified that he worked 13-hour days].) "[W]here an employer is subject to a recordkeeping requirement, the burden shifts to that employer to *rebut employee proof of monies owed*." (*Donohue, supra,* 11 Cal.5th at p. 75, italics added.)

Lemus has no proof of monies owed. Decedent was not deposed to establish that he missed meals or was discouraged or impeded from taking a break; a bare allegation in the unverified complaint is not proof.[4] Nothing Lemus submitted to the court refutes Gleason's declaration that Owens provided compliant meal periods and Decedent never reported missing one. Failure to record lunch breaks is not conclusive proof that none was ever taken. There is no triable issue as to how many breaks were missed, if any. Lemus's claim simply cannot be proved.

---

[4] "[N]ot all depositions are conducted for discovery purposes" and may be used to "preserve testimony when there is reason to believe the deponent will not later be called at trial" due to illness. (*Berroteran v. Superior Court* (2022) 12 Cal.5th 867, 894.)

### b. Rest Breaks

Lemus claims Decedent was deprived of rest breaks.  An employer is not required to record breaks; however, it may be liable if breaks were not taken because "the defendant did not *permit* the plaintiffs to take their rest breaks."  (*Cicairos v. Summit Logistics, Inc.* (2005) 133 Cal.App.4th 949, 963.)  Gleason declared that Decedent's CBA entitled him to paid rest time; there is no record he was compelled to work through a break or complained of missed breaks to Owens or his union.

Just as Decedent never testified about meal breaks, no one preserved his recollection of missed rest breaks.  Lemus has no proof that Decedent was denied breaks.  He can only speculate about Decedent's rest breaks, and speculation is not a sufficient basis to proceed to trial.[5]

### c. Overtime Pay

Lemus's cause of action for failure to pay overtime is based on section 510.  However, section 510 "do[es] not apply to an employee covered by a valid collective bargaining agreement if the agreement expressly provides for the wages, hours of work, and working conditions of the employees, and if the agreement provides premium wage rates for all overtime hours worked and a regular hourly rate of pay . . . of not less than 30 percent more than the state minimum wage."  (§ 514.)

Owens offered proof that a CBA covered Decedent's wages, hours and working conditions, and provided premium wages for overtime.  Lemus concedes that a CBA governed Decedent's

---

[5] In his reply brief, Lemus states that he "waives" this claim, though it is unclear whether he is waiving a response to Owens's argument or the entire claim.

11

employment:  He writes that Decedent was a union member "and the terms and conditions of his employment were subject to a collective bargaining agreement ('CBA')."**6**

Lemus argues that Owens did not carry its burden of showing Labor Code section 514 applies to Decedent because it relied on hearsay—a state website listing minimum wage rates— to prove that Decedent earned 130 percent more than the state minimum wage.  Published state wage rates fall within the hearsay exception for official records.  (Evid. Code, § 1280.)  Moreover, Lemus forfeited the argument by failing to object.  (Cal. Rules of Court, rule 3.1352; *Collin v. CalPortland Co.* (2014) 228 Cal.App.4th 582, 599, fn.5.)  Lemus's claim for overtime wages under Labor Code section 510 cannot proceed because he was exempt under Labor Code section 514.

### d.  Wage Statements

Lemus contends that Owens failed to provide accurate wage statements.  Section 226 requires an employer to provide an accurate itemized statement of all amounts earned and owing.  Lemus writes that triable issues exist because Decedent's statements "do not reflect the meal premiums owed, . . . do not accurately reflect the correct calculation of overtime and double time wages, and they do not reflect wages which were due and owing for time recorded but which was not paid."

---

**6** Lemus asserts that Owens waived section 514 by failing to raise it below; however, Lemus was aware of section 514 and raised it himself.  Its application presents a question of law inasmuch as Lemus concedes Decedent was covered by a CBA.  (See *Koch v. Rodlin Enterprises* (1990) 223 Cal.App.3d 1591, 1595 [points may be resolved for the first time on appeal if the facts are undisputed and the issue raises a question of law].)

12

Section 226 imposes statutory penalties for incorrect wage statements.  "[A]n employer's objectively reasonable, good faith belief that it has provided employees with adequate wage statements precludes an award of penalties." (*Naranjo v. Spectrum Security Services, Inc.* (2024) 15 Cal.5th 1056, 1087.) Nothing in the record shows Owens acted in a knowing, intentional, or willful manner. (*Id.* at p. 1079–1080.)  Further, the purpose of imposing the penalty is not "to compensate, but to deter and punish." (*Id.* at p. 1075.)  Penalties cannot be assigned and do not survive an employee's death. (*Amalgamated, supra,* 46 Cal.4th at p. 1003; *Auslen v. Thompson, supra,* 38 Cal.App.2d at p. 213.)

In any event, Lemus lacks evidence to support a claim that the wage statements fail to reflect unpaid meal premiums or overtime.  Decedent never complained to Owens about missed meals or overtime, nor did he preserve his recollections in sworn testimony.  The "randomly selected" documents submitted by plaintiff's counsel are unhelpful.  The time records date from 2016 to 2019.[7]  By contrast, many of the wage statements date from 2020–2021, when Decedent was on Owens's payroll but not reporting for work.  Lemus did not provide a spreadsheet comparing the time records to the wage statements; it is not the job of the courts to make that comparison.  No competent evidence supports the section 226 cause of action.

---

[7] We do not address the court's ruling on the admissibility of the time records but assume, *arguendo*, that they are Decedent's records though they do not bear his name.

13

### e. UCL Claim

Lemus's UCL claim is based on alleged Labor Code violations. The complaint states, "Each and every one of DEFENDANTS' acts and omissions in violation of the California Labor Code and/or the applicable IWC Wage Order as alleged here, including but not limited to DEFENDANTS' failure and refusal to provide required rest periods, . . . pay overtime compensation, . . . pay minimum wages, . . . furnish accurate itemized wage statements . . . constitutes an unfair and unlawful business practice" under the UCL.

The UCL " 'borrows' violations of other laws and treats them as unlawful practices." (*De La Torre v. CashCall, Inc.* (2018) 5 Cal.5th 966, 980.) As discussed in the preceding sections, none of Lemus's Labor Code claims can proceed. Without an underlying Labor Code violation, Lemus's UCL claim fails.[8]

---

[8] An " 'individual PAGA claim' [refers] to claims based on code violations suffered by the plaintiff." (*Viking River Cruises, Inc. v. Moriana* (2022) 596 U.S. 639, 649 [142 S.Ct. 1906, 213 L.Ed.2d 179].) As detailed in this section, Lemus cannot establish any code violations suffered by Decedent. Therefore, he has no individual PAGA claim to make.

## DISPOSITION

The judgment is affirmed.  Respondent is entitled to recover its costs on appeal.

NOT TO BE PUBLISHED.



                                          CHAVEZ, Acting P. J.

We concur:



RICHARDSON, J.



GOORVITCH, J.*

---

\* Judge of the Superior Court of Los Angeles County, assigned by the Chief Justice pursuant to article 6, section VI of the California Constitution.

15